J-S72027-18

2019 PA Super 152

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHAUNTELL BREE DANZEY :
:
Appellant : No. 477 MDA 2018

Appeal from the Judgment of Sentence February 27, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005515-2016

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

OPINION BY SHOGAN, J.:                               **FILED MAY 9, 2019**

Appellant, Shauntell Bree Danzey, appeals from the judgment of

sentence entered on February 27, 2018, in the Court of Common Pleas of

Dauphin County. We affirm.

The trial court summarized the factual history of this case as follows:

> [T]he instant case arose out of a love triangle involving
> [Appellant], her former boyfriend (Anthony Bowers), and
> [("Victim")], who began dating Bowers sometime after [Appellant]
> and Bowers had ended their relationship.  At some point after
> [Victim] began dating Bowers, various social media accounts,
> which bore profile pictures of [Appellant] or other details that
> suggested [Appellant's] account ownership and control, began
> publishing derogatory, sometimes threatening posts referencing
> and occasionally "tagging" [Victim].  [Victim] showed these posts
> to her sister, [], whom the Commonwealth used at trial to
> introduce 16 photographic exhibits of the harassing posts that
> [Victim], prior to her death,[1] began collecting after a no-contact
> order was put into place between [Victim] and [Appellant].

Trial Court Opinion, 5/8/18, at 1-2 (internal citations omitted).

_____

[1]  Victim died in an automobile accident on December 26, 2016.

At trial, Officer Matthew Gallup testified that he responded to a call placed by Victim to the Harrisburg Police Department on September 20, 2016. N.T., 8/15/17, at 131. At the time of their meeting, Victim told Officer Gallup that she was being harassed by Appellant through various social media accounts, despite the fact that a no-contact order was in place between Victim and Appellant. *Id.* at 132-133. During that meeting, Victim showed Officer Gallup hard copies of the relevant social media posts, as well as posts still viewable on Victim's phone. *Id.* As a result, Appellant was charged by criminal information filed September 20, 2016, with one count of stalking[2] and one count of terroristic threats. On November 17, 2016, the Commonwealth filed an amended information, removing the terroristic threat charge and adding a harassment[3] charge.

Prior to commencement of trial, Appellant filed a motion *in limine* on August 14, 2017, seeking to exclude the introduction of sixteen electronic communications, including Facebook and Instagram posts, that were of a vulgar, derogatory, and sometimes threatening nature, directed at Victim. The motion *in limine* was denied by order of court entered August 14, 2017. The matter proceeded to a two-day jury trial on August 14-15, 2017. At the conclusion of the trial, Appellant was convicted of both charges. Appellant was sentenced on February 27, 2018, to an aggregate term of eleven and

_____

[2] 18 Pa.C.S. § 2709.1(A)(2).

[3] 18 Pa.C.S. § 2709(A)(4).

one-half months to twenty-three months of incarceration, followed by two years of probation. Appellant filed a notice of appeal on March 15, 2018. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.     In a prosecution for harassment and stalking, did not the trial court err in admitting various social media communications and related testimony when the Commonwealth failed to authenticate such evidence under Pa.R.E. 901 by establishing [Appellant's] authorship of such communications?

II.    In a prosecution for harassment and stalking, did not the trial court err in admitting an irrelevant social media communication (Exhibit 16) that was posted after the purported [V]ictim died?

Appellant's Brief at 4.

In her first issue, Appellant argues that the trial court erred in admitting the social media communications and related testimony because the Commonwealth failed to authenticate this evidence pursuant to Pa.R.E. 901 by establishing Appellant's authorship of these communications. Appellant's Brief at 16. Appellant asserts that there is no direct evidence that Appellant authored the posts. *Id.* at 24. Appellant further maintains that her authorship cannot be established circumstantially because there are no context clues that prove her to be the author. *Id.* Appellant also contends that to the extent the Commonwealth admitted the social media communications to prove the truth of the matters asserted therein, the communications were inadmissible hearsay. *Id.* at 25.

Our standard of review of a denial of a motion *in limine* is as follows:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

**Commonwealth v. Moser**, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted).

Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). Pa.R.E. 901(b)(4). Under Rule 901(b)(4), evidence may be authenticated by "*Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(b)(4).

Pennsylvania appellate courts considered the authentication of computerized instant messages and cell phone text messages in **In the Interest of F.P., a Minor**, 878 A.2d 91, 96 (Pa. Super. 2005) (addressing

- 4 -

computerized instant messages), and **Commonwealth v. Koch**, 39 A.3d 996, 1005 (Pa. Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014) (addressing cell phone text messages). In **Interest of F.P.**, this Court rejected the argument that electronic communications, such as instant messages or e-mails, are inherently unreliable due to their relative anonymity and the difficulty connecting them to their author, noting that the same uncertainties exist with written documents: "A signature can be forged; a letter can be typed on another's typewriter; distinct letterhead stationary can be copied or stolen." **Interest of F.P.**, 878 A.2d at 95. The **Interest of F.P.** Court also rejected the notion that unique rules for admissibility of electronic communications should be created, stating "We believe that e-mail messages and similar forms of electronic communication can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law[.]" **Id.** Additionally, the **Interest of F.P.** Court concluded that the admissibility of an electronic communication is to be evaluated on a case-by-case basis, as any other document, to determine whether there has been an adequate foundational showing of its relevance and authenticity. **Id.** at 96.

In considering the authentication of text messages, the **Koch** Court concluded that "[i]mplicit in these decisions is the realization that e-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally." **Koch**, 39 A.3d at 1004 (citations omitted). The **Koch** Court additionally observed that "electronic

writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated." *Id.* at 1003. This Court also noted the following challenges in authenticating electronic communications:

> [T]he difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

*Id.* at 1004. Accordingly, the **Koch** Court ruled, "[A]uthentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." *Id.* at 1005. In **Koch**, the Court concluded that testimony presented by the Commonwealth was insufficient to authenticate the text messages in question, noting that there was no testimony from any person who had sent or received the text messages, nor any contextual clues in the drug-related text messages that tended to reveal the identity of the sender. *Id.* at 1005. On that basis, the **Koch** Court concluded that the admission of the text messages constituted an abuse of discretion. *Id.*

In **Commonwealth v. Mangel**, 181 A.3d 1154 (Pa. Super. 2018) this Court had the opportunity to address authentication of communications made on Facebook and other social media platforms. In addressing these

communications, this Court acknowledged the holdings in **Interest of F.P.** and **Koch**, and stated the following in determining the authentication of these postings:

> In our view, the same authorship concerns, as expressed by the **Koch** Court in relation to e-mails and instant messages, exist in reference to Facebook and other social media platforms, that can be accessed from any computer or smart phone with the appropriate user identification and password. **See Koch**, 39 A.3d at 1004; **see also In re F.P.**, 878 A.2d at 95 (stating that "anybody with the right password can gain access to another's email account and send a message ostensibly from that person."). Social media evidence presents additional challenges because of the great ease with which a social media account may be falsified, or a legitimate account may be accessed by an imposter. Nevertheless, social media records and communications can be properly authenticated within the existing framework of Pa.R.E. 901 and Pennsylvania case law, similar to the manner in which text messages and instant messages can be authenticated. Initially, authentication social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. **See In re F.P.**, 878 A.2d at 96. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender. **See Koch**, 39 A.3d at 1005. Other courts examining the authentication of social media records have ruled that the mere fact that an electronic communication, on its face, purports to originate from a certain person's social networking account is generally insufficient, standing alone, to authenticate that person as the author of the communication.

**Mangel**, 181 A.3d at 1162 (some internal citations omitted).

In addressing the claims before it, the **Mangel** Court concluded that the trial court did not abuse its discretion in denying the Commonwealth's motion

*in limine* to introduce into evidence various Facebook posts, and in support of

its conclusion, stated:

> [T]the Commonwealth presented no evidence, direct or circumstantial, tending to substantiate that Mangel created the Facebook account in question, authored the chat messages, or posted the photograph of bloody hands. The mere fact that the Facebook account in question bore Mangel's name, hometown and high school was insufficient to authenticate the online and mobile device chat messages as having been authored by Mangel. Moreover, there were no contextual clues in the chat messages that identified Mangel as the sender of the messages.

*Id.* at 1164.

We find the holdings in *Interest of F.P.*, *Koch*, and *Mangel* to be

instructive in this case. Here, the Commonwealth presented evidence that

Appellant owned the relevant social media accounts. As the trial court

explained, the posts, Exhibits 1-16, reflected origination from social media

accounts belonging to Appellant. Trial Court Opinion, 5/8/18, at 1-8, 11-12.

The posts were made from the following accounts: "Bre TheBoss Holland,"

which account also displayed a cover photo of Appellant; "Bre Moved on

Holland"; "Bre Holland"; "shaunbre76," which included a profile picture of

Appellant; "Quin Loveislove Robbins"; and "BriiBre Holland," which displayed

a profile picture of Appellant. Commonwealth Exhibits 1-16. The trial court

further explained:

> At trial, the Commonwealth also presented the testimony of Matthew Gallup, a patrol officer with the Harrisburg Police Department. On September 20, 2016, he met with [Victim] who indicated she was being harassed by [Appellant] through various social media accounts, despite the fact that a no-contact order was in place between the parties. During that meeting,

Officer Gallup was shown hard copies of the relevant social media posts, as well as posts still viewable on [Victim's] phone.

Officer Gallup testified to several facts suggesting [Appellant's] ownership of the relevant social media accounts. He testified that the middle name of [Appellant], which he included on the Criminal Complaint, is Bree. Additionally, [Appellant's] date of birth, as also indicated on the Criminal Complaint, is August 22, 1976. Officer Gallup further testified that the profile picture displayed on Commonwealth Exhibit 10 was that of [Appellant], whom he identified in the courtroom.

Trial Court Opinion, 5/8/18, at 8 (internal citations omitted). Thus, there was sufficient evidence to establish that Appellant owned the social media accounts.

Furthermore, there was corroborating evidence that Appellant was the author of the posts. Each of the posts contained contextual clues that linked Appellant to Victim, and referenced their relationship. As the trial court stated:

In the instant case, the Commonwealth witnesses provided ample circumstantial evidence to meet the threshold for admission of the social media posts against [Appellant]. All of the harassing and threatening social media posts introduced by the Commonwealth could, in one or several ways, be linked to [Appellant]. Some accounts displayed a photo of [Appellant] as a profile picture. Others used a variation of her name and/or birthdate. The timing of the posts offered further circumstantial evidence. According to the testimony of [Victim's] sister, all of the posts were made after [Appellant] learned [Victim] had begun dating [Appellant's] ex-boyfriend.

Most of the posts also contained contextual clues supporting the identity of [Appellant] as their author. First, the posts, across all the variously named accounts, expressed consistent themes in a consistently vulgar voice: that [Victim] was "a whore" who pursued the paramours of other women; that [Victim] didn't [use] condoms and might have AIDS; that [Victim] should get tested to

know her (presumably) HIV status. Second, the posts contained references to circumstances specific to the relationship between [Appellant] and [Victim]. The posts' references to "cuz" (cousin) suggested [Appellant's] authorship because her cousin, Sheree, had been a longtime friend of [Victim]. References to the boyfriend's "playing a game" and "lost files" coincided with [Appellant's] attempt to gain access to [Victim's] workplace at PHEAA, where [Victim] theoretically had potential control over the boyfriend's student loans. Third, some of the posts contained references to "cop caller", and there was, at the time of the posts, a no-contact order in place between [Appellant] and [Victim].

We believe these facts, as introduced by the Commonwealth, established an adequate foundation to authenticate the challenged exhibits and justify their admission into evidence against [Appellant].

Trial Court Opinion, 5/8/18, at 11-12. The trial court also stated:

Moreover, while the Commonwealth had no witness who testified they observed [Appellant] creating the harassing social media posts, the Commonwealth's case, as noted above, included details linking [Appellant] not just to the accounts, but also to the posts themselves. The posts contained vulgar rants consistent with a jealous ex[-]girlfriend who had just learned her friend had begun dating her ex. Further, the posts referenced details, like [Appellant's] cousin and [Victim's] job, specific to the relationship between the two women. The foundation presented was sufficient to justify the admission of the evidence for the consideration of the jury, who ultimately found that the posts not only came from accounts linked to [Appellant] but were also authored, beyond a reasonable doubt, by her as well.

Trial Court Opinion, 5/8/18, at 13.

We agree with the trial court's conclusion. Here, the Commonwealth presented evidence substantiating that Appellant owned the Facebook and Instagram accounts in question and circumstantial evidence tending to corroborate that Appellant was the author of these communications. *Mangel*, 181 A.3d at 1162. The contextual clues in the posts, taken together with the

testimony provided by Victim's sister, support the conclusion that Appellant was the author of the messages. N.T., 8/14/17, at 37-74; N.T., 8/15/17, at 84-130.[4] Accordingly, the trial court did not abuse its discretion in denying Appellant's motion *in limine* to exclude this evidence from trial.

Moreover, to the extent that Appellant argues these exhibits should not have been admitted because they constituted hearsay and did not meet one of the hearsay exceptions, we conclude that the claim lacks merit. As the trial court aptly observed:

> Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence *to prove the truth of the matter asserted*. Pa.R.E. 801(c). In the instant case, the Commonwealth did not offer the identified social media posts to prove the matters asserted therein. More specifically, the Commonwealth did not offer the posts to prove that [Victim] was a prostitute, refused to [use] condoms, and couldn't carry a baby to term. Rather , the Commonwealth offered the posts to prove the elements of Harassment (that [Appellant], with intent to harass, annoy or alarm [Victim], communicated to and about her lewd, lascivious, threatening or obscene words, language, drawings or caricatures) and Stalking (that [Appellant] engaged in a course of conduct or repeatedly communicated to [Victim] under circumstances which demonstrated or communicated either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.) *See* 18 Pa. C.S.A. §2709(A)(4) and 18 Pa.C.S.A. §2709.1(A)(2).

Trial Court Opinion, 5/8/18, at 14 (emphasis in original).

---

[4] Victim's sister also testified that she reported the account bearing the name "Quin Loveislove Robbins" to Facebook due to the inappropriate posts. N.T., 8/15/17, at 89-90. As a result, she was aware of the owner of the account. *Id.*

The comment to Pa.R.E. 801(c) is instructive:

A statement is hearsay only if it is offered to prove the truth of the matter asserted in the statement. There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted.

Sometimes a statement has direct legal significance, whether or not it is true. For example, one or more statements may constitute an offer, an acceptance, a promise, a guarantee, a notice, a representation, a misrepresentation, defamation, perjury, compliance with a contractual or statutory obligation, etc.

More often, a statement, whether or not it is true, constitutes circumstantial evidence from which the trier of fact may infer, alone or in combination with other evidence, the existence or non-existence of a fact in issue. For example, a declarant's statement may imply his or her particular state of mind, or it may imply that a particular state of mind ensued in the recipient.

Pa.R.E. 801(c), cmt.

As the trial court noted, the posts were not introduced for purposes of proving the truth of the matter asserted therein. Rather, introduction of the posts established Appellant's state of mind, and related directly to consideration of the charged offenses of stalking and harassment. Thus, the posts in question did not constitute hearsay, and the trial court did not abuse its discretion in admitting them.

In her second issue, Appellant argues that the trial court erred in admitting Commonwealth Exhibit 16 because it is irrelevant. Appellant's Brief at 26. Appellant contends that the communication reflected in Exhibit 16 was sent after Victim's death. *Id.* at 26. Appellant argues that the charges filed against her, stalking and harassment, were against Victim's person. *Id.* at

27. Accordingly, Appellant maintains, a communication sent after Victim's death cannot constitute the *actus reus* of either of the charges. *Id.* Appellant further argues that even if the communication was relevant, it was outweighed by the unfair prejudice stemming from its introduction. *Id.* Appellant asserts that this evidence was unfairly prejudicial because "its primary import was to paint [Appellant] as the type of person who would celebrate the untimely death of another person." *Id.* at 27-28.

The post at issue, Commonwealth Exhibit 16, memorialized a Facebook post by "Quin Loveislove Robbins" reflecting the following: "DING DONG THE BITCH IS DEAD (smiley face emojis) STUPID HOE (emojis)." Commonwealth's Exhibit 16; N.T., 8/15/17, at 116. Victim's sister testified that she saw this post sometime after her sister passed away on December 16, 2016. N.T., 8/15/17, at 113.

The offense of stalking is defined in relevant part as follows: "A person commits the crime of stalking when the person . . . engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. § 2709.1(a)(2). A person commits the crime of harassment "when, with intent to harass, annoy or alarm another, the person . . . communicates to or about such other person any lewd,

lascivious, threatening or obscene words, language, drawings or caricatures."

18 Pa.C.S. § 2709(a)(4).

> In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would

>> inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

***Commonwealth v. Serge***, 837 A.2d 1255, 1260-1261 (Pa. Super. 2003)

(internal citations omitted).

In addressing this issue, the trial court provided the following analysis:

> We agree a deceased person can no longer be harassed or stalked. However, we admitted Exhibit 16 for another purpose that was relevant to the Commonwealth's case: demonstration of [Appellant's] intent and mindset. As articulated previously in this Opinion, both Harassment and Stalking have an intent element. The Facebook post depicted by Exhibit 16 suggested strongly that the preceding social media posts made by [Appellant] as part of a continuing course of conduct prior to [Victim's] death were not made as good-natured jokes or had some legitimate purpose. Rather, they were made with the requisite criminal intent.

With regard to [Appellant's] claim that Exhibit 16, even if relevant, was more prejudicial than probative, we also disagree.

* * *

[T]he more appropriate legal inquiry is the question of whether [Appellant] was *unfairly* prejudiced. We do not believe she was.

In the context of the other posts admitted at trial, Exhibit 16 was not singularly outrageous. Its celebration of [Victim's] death was consistent with the tenor of other posts suggesting violence and death.

Trial Court Opinion, 5/8/18, at 15-16 (emphasis in original).

As outlined above, the offenses of stalking and harassment both include elements of intent by the actor to cause the other person some level of distress. Introduction of this exhibit is relevant to establish the ill-will Appellant had for Victim and supports the conclusion that she engaged in the offenses of stalking and harassment of Victim. Thus, we agree the exhibit was relevant.

Moreover, the probative value was not outweighed by unfair prejudice. The post reflects Appellant's attitude toward Victim; the fact that it reflected a negative attitude or an opinion reflecting unflatteringly on Appellant does not make it unfairly prejudicial. This evidence forms part of the history and natural development of the events and offenses with which Appellant was charged. *Serge*, 837 A.2d at 1260-1261. Accordingly, the trial court was not required to sanitize the record by keeping it from the jury, *id.*, and did not abuse its discretion in denying Appellant's motion *in limine* to exclude this evidence. Appellant is entitled to no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/09/19