J-S47019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RONALD RAY SHOOP, JR. | : | |
| | : | |
| Appellant | : | No. 381 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000702-2018

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 06, 2019**

Appellant Ronald Ray Shoop, Jr. appeals from the judgment of sentence imposed following his jury trial convictions for two counts of criminal conspiracy and one count each of possession of a controlled substance with intent to deliver and transmission of contraband to a prison inmate.[1]  Appellant argues that the trial court erred by not allowing him to cross-examine a Commonwealth witness about her drug dealing activities.  We affirm.

The relevant facts and procedural history of this appeal are as follows.

On February 19, 2018, Estee Fritz executed a plan to deliver Buprenorphine, [also known as Suboxone,] hidden in a red balloon, to Casey Nicodemus, an inmate at SCI Rockview.  Estee Fritz and Casey Nicodemus were caught and interrogated by both corrections and police officers, [and] they reported [Appellant] as the mastermind of the plan, and his girlfriend, Angel Hart, as an

_____

[1] 18 Pa.C.S. § 903(a)(1), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. § 5123(a), respectively.

accomplice.[fn1]  Estee Fritz, Casey Nicodemus, [Appellant], and Angel Hart were charged as co-conspirators on March 22, 2018.

> [fn1] Despite contrary police reports, Casey Nicodemus took the stand at [Appellant's] trial and denied implicating [Appellant] in the conspiracy to bring Buprenorphine into SCI Rockview.

> The amended information filed on January 4, 2019 charged [Appellant with the aforementioned offenses].  A notice of consolidation was filed . . . joining [Appellant's] case with co-conspirators Estee Fritz, Angel Hart, and Casey Nicodemus.  All defendants, with the exception of [Appellant], entered plea deals before their scheduled trial.  [Appellant] was tried before a jury of his peers on January 7, 2019 . . . .

Trial Ct. Op., 5/2/19, at 1-2 (some capitalization omitted).

At trial, the Commonwealth called Ms. Fritz to explain her role in the delivery of drugs to SCI Rockview.  Ms. Fritz testified that she smuggled drugs into the prison on three different occasions during visits with her fiancé, Mr. Nicodemus.  *See* N.T. Trial, 1/7/19, at 32.  Regarding the incident at issue, Ms. Fritz testified that Appellant's girlfriend, Ms. Hart, came to her apartment and provided the drugs for her to take to the prison.  *Id.* at 49.  Ms. Hart also informed Ms. Fritz that the drugs would end up with Appellant.  *Id.* at 50.

On cross-examination, Appellant's counsel[2] asked Ms. Fritz about the other occasions when she smuggled drugs into the prison.  *Id.* at 73-74.  Appellant's counsel asked whether Ms. Fritz was acting as a "puppet" on behalf of her co-conspirators, and Ms. Fritz responded affirmatively.  *Id.*  Thereafter, the following exchange occurred:

---

[2] Shannon M. Malone, Esq., represented Appellant at trial and continues to represent him on appeal.

[Appellant's Counsel:] You told [Pennsylvania State Police] Trooper [Michael] Brown that you brought that K2 in for Casey Nicodemus, correct?

[Ms. Fritz:] Correct.

[Appellant's Counsel:] You were actually selling drugs on the street, too? Would that be a fair statement?

[Ms. Fritz:] No.

[Commonwealth]: Objection, Your Honor. Relevance.

[Appellant's Counsel]: Can we approach?

The Court: You may.

(Whereupon, the following conversation was held at side bar:)

[Commonwealth]: Your Honor, whether or not she was selling drugs on the street has no relevance to today's proceeding about smuggling Suboxone into SCI Rockview.

[Appellant's Counsel]: If she has—if she is selling drugs on the street, she is bringing drugs in for Casey Nicodemus and my client had nothing to do with that, I think it certainly goes to her credibility when she is implicating my client in this situation.

The Court: I will sustain the objection.

*Id.* at 75.

At the conclusion of trial, the jury convicted Appellant of all charges. On February 7, 2019, the trial court sentenced Appellant to an aggregate term of thirty to sixty months' incarceration. Appellant did not file post-sentence motions.

Appellant timely filed a notice of appeal March 4, 2019, and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on

- 3 -

appeal on March 22, 2019. The trial court filed a responsive opinion on May 2, 2019, concluding as follows:

> Any testimony elicited by [Appellant] from Estee Fritz concerning her past conduct as a drug dealer was irrelevant to whether [Appellant] was guilty of masterminding a conspiracy to bring drugs into SCI Rockview. Even if [the trial c]ourt found the evidence to be relevant, its probative value did not outweigh its effect of confusing and misleading the jury because Fritz was not on trial, and the Commonwealth had not otherwise opened the door to this specific instance of bad conduct from Fritz's past.

Trial Ct. Op. at 3.

Appellant now raises one question for our review:

> Did the trial court err when it denied [Appellant] the ability to cross examine the Commonwealth's main witness against him concerning her selling drugs outside the prison, which would tend to impeach her testimony by showing corrupt motive and diminish her credibility?

Appellant's Brief at 7.

Appellant asserts "Ms. Fritz had a clear corrupt motive and interest to lie and pin the blame on Appellant in this case," because she faced up to ten years' imprisonment for her charges as a co-conspirator. **Id.** at 18. Appellant also maintains that the Commonwealth discovered text messages on Ms. Fritz's phone, which revealed that she offered to sell drugs for another individual unrelated to Appellant or Mr. Nicodemus. **Id.** "Had [d]efense counsel been permitted to cross-examine Ms. Fritz about these text messages and about this situation, that testimony would have diminished the credibility of Ms. Fritz's repeated testimony that she just did what she was told and acted as a puppet." **Id.** Further, Appellant cites **Commonwealth v. Evans**, 512

A.2d 626, 631 (Pa. 1986), for the proposition that "whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against [her] within the same jurisdiction, that possible bias . . . must be made known to the jury."[3] *Id.* at 20. Appellant concludes the trial court erred by prohibiting him from cross-examining Ms. Fritz about whether she sold drugs outside the prison, as such testimony would have established the witness's bias and motive for testifying against Appellant. *Id.* at 23.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations and quotation marks omitted); *see also Commonwealth v. Radecki*, 180

---

[3] Appellant acknowledges that the Commonwealth had not charged Ms. Fritz for any unrelated drug dealing incidents at the time of trial. Appellant's Brief at 22. Nevertheless, Appellant argues that "the **potential** for [charging] to happen certainly existed—as the Commonwealth had evidence of it—and Ms. Fritz knew of that potential because she herself had handed her phone over to police voluntarily. . . ." *Id.* (emphasis in original).

- 5 -

A.3d 441, 465 (Pa. Super. 2018) (stating that "[t]he scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion" (citation omitted)).

"Relevance is the threshold for admissibility of evidence." **Commonwealth v. Tyson**, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**Commonwealth v. Danzey**, 210 A.3d 333, 342 (Pa. Super. 2019) (citation and quotation marks omitted).

"[C]ross-examination is the primary method for testing the believability of a witness and the truth of [her] testimony." **Radecki**, 180 A.3d at 465 (citation omitted).

> Pennsylvania Rule of Evidence 611(b) addresses the scope of cross-examination, providing that "[c]ross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying.

*Id.* (citations and some quotation marks omitted).

"[A]n attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with [her] testimony." **Commonwealth v. Bricker**, 882 A.2d 1008, 1019 (Pa. Super. 2005) (citation omitted). Our rules of evidence, however, provide that except for a circumstance not applicable here, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct."[4] Pa.R.E. 608(b)(1). "Additionally, the veracity of a witness may not be impeached by prior arrests which have not led to convictions." **Commonwealth v. Chmiel**, 889 A.2d 501, 534 (Pa. 2005) (footnote and citations omitted).

Instantly, Appellant's counsel sought to question Ms. Fritz about her other, alleged drug dealing activities. The trial court did not permit Appellant's counsel to continue with this line of questioning, concluding that evidence of such conduct would not aid in establishing whether Appellant participated in the instant conspiracy to smuggle drugs into the prison. **See** Trial Ct. Op. at 3. Because there is no evidence that Ms. Fritz was charged, arrested, or convicted for the other incidents alleged, the trial court properly precluded Appellant's counsel from questioning Ms. Fritz about the incidents. **See** Pa.R.E. 608(b)(1); **Chmiel**, 889 A.2d at 534.

To the extent Appellant also emphasizes that Ms. Fritz testified against him to receive favorable treatment for her own charges stemming from the

---

[4] Pennsylvania Rules of Evidence 608(b) and 609 provide an exception for evidence of conviction of a crime, which does not apply in this case.

instant case, the jury received ample evidence regarding Ms. Fritz's plea agreement. *See* N.T. Trial at 63-64. Appellant's counsel also cross-examined Ms. Fritz about the agreement, eliciting details about the favorable sentencing treatment Ms. Fritz received in exchange for her cooperation.[5] *Id.* at 70. Therefore, the trial court did not abuse its discretion when it refused to allow Appellant to question Ms. Fritz about her other, alleged, drug dealing activities. *See Radecki*, 180 A.3d at 465; *Belknap*, 105 A.3d at 9-10. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019

---

[5] Moreover, the trial court provided a "corrupt and polluted source" instruction. *See* N.T. Trial at 227. The trial court also expressly informed the jury that Appellant's accomplice "may testify falsely in the hope of obtaining favorable treatment or for some corrupt or wicked motive." *Id.* at 226.