J-S20024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.D.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | No. 1236 MDA 2020 |

Appeal from the Order Entered September 17, 2020
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-JV-0000091-2020

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                **FILED:  SEPTEMBER 28, 2021**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the York County Court of Common Pleas, which granted in part and denied in part the Commonwealth's motion to admit out-of-court statements from L.C. ("Child") alleging that Appellee, C.D.C., committed delinquent acts.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On December 10, 2019, Kimberly Hine, a forensic interviewer with the York County Children's Advocacy Center ("CAC"), interviewed Child regarding an incident with Appellee.  As a result of the interview, the Commonwealth filed

---

[1] The Commonwealth certified in its notice of appeal that the trial court's ruling would substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d) (stating: "In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").

a delinquency petition against Appellee based upon the offenses of rape of child, sexual assault, and two counts of indecent assault of a person less than 13 years of age.[2]

On August 19, 2020, the Commonwealth filed a motion to admit Child's out-of-court statements from the CAC interview pursuant to the "tender years" statute, 42 Pa.C.S.A. § 5985.1. The court conducted a hearing on the motion on September 8, 2020. At that time, the evidence revealed that a break occurred approximately forty-two (42) minutes into Child's interview. During the break, the interviewer conferred with police, who were present in the next room. After the break, the interviewer resumed questioning Child.

On September 17, 2020, the court issued an opinion and order granting in part and denying in part the Commonwealth's motion to admit Child's out-of-court statements. The court determined that Child's statements made prior to the break in questioning were relevant, reliable, and admissible. The interviewer's questions after the break, however, were leading. The court found Child's responses to the leading questions lacked consistency and reliability. Consequently, the court declined to admit Child's statements made after the break in questioning.

On September 22, 2020, the Commonwealth timely filed a notice of appeal. That same day, the court ordered the Commonwealth to file a

---

[2] 18 Pa.C.S.A. §§ 3121(c), 3124.1, and 3126(a)(7), respectively.

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely complied on October 13, 2020.

The Commonwealth raises one issue for our review:

> The [trial] court abused its discretion in denying admission of a child sexual assault victim's statements made during a forensic interview and finding that the statements did not come in under the Tender Years doctrine. The [trial] court erred in its application of factors relating to the totality of the circumstances to be considered under the Tender Years doctrine.

(Commonwealth's Brief at 4).

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 219 A.3d 597 (2019) (internal quotation marks omitted).

On appeal, the Commonwealth argues that the tone and tenor of Child's interview remained consistent before and after the break in questioning. The Commonwealth maintains that the interviewer used open-ended, non-leading questions, and Child consistently described the incident of sexual abuse. The Commonwealth emphasizes Child's statements that: 1) the incident occurred in a tent at his grandfather's home; and 2) the abuse was perpetrated by Appellee. The Commonwealth also contends that Child used the same, age-appropriate language throughout the interview, and Child had no motive to fabricate his statements after the break in questioning. Under the totality of these circumstances, the Commonwealth insists that Child's entire interview is reliable, and the court's findings are unsupported by the record. The Commonwealth concludes that the court abused its discretion by failing to allow admission of Child's entire interview. We disagree.

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the

statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa.Super. 2006), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (2006).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.* "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Kriner*, 915 A.2d 653, 657 (Pa.Super. 2007) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super. 2002)). The statute governing the tender years exception provides, in relevant part:

> **§ 5985.1.  Admissibility of certain statements**
>
> **(a)   General rule.—**
>
> (1)      An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> > (i)      the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> > (ii)    the child either:
>
> > > (A)    testifies at the proceeding; or
>
> > > (B)    is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a)(1).

"Any statement admitted under [Section] 5985.1 must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." **Commonwealth v. O'Drain**, 829 A.2d 316, 320 (Pa.Super. 2003). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." **Commonwealth v. Lyons**, 833 A.2d 245, 255 (Pa.Super. 2003), *appeal denied*, 583 Pa. 695, 879 A.2d 782 (2005). Factors the court may consider when determining reliability include, but are not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." **Commonwealth v. Delbridge**, 578 Pa. 641, 675, 855 A.2d 27, 47 (2003).

Instantly, Child was nine years old at the time of the interview. (**See** N.T. Interview, 12/10/19, at 6). The interviewer initially informed Child that they were in a room with a microphone and two cameras, and people in the next room were watching the interview. (**Id.** at 2-3). Child immediately expressed reluctance to proceed and said, "I do not want to do this." (**Id.** at

3). Child also stated, "My mom said there was going to be some police officers." (*Id.*) The interviewer confirmed that a police officer was in the next room, but Child was not in any sort of trouble. (*Id.* at 3-4).

The interviewer proceeded to obtain some basic information about Child including his favorite things to do, the names of his friends, and his favorite parts of school. (*Id.* at 6-12). The interviewer transitioned into questioning Child about the members of his family. (*Id.* at 13-16). After additional conversation about Child's other school friends, the interviewer confirmed that Child understood the difference between truth and lies. (*Id.* at 21-22).

Although Child indicated that he would tell the truth, Child expressed displeasure over his mother's decision to take him to the interview. (*Id.* at 22-23). The interviewer attempted to calm Child's anxiety. Later, the interviewer questioned whether Child's mother told him what to say at the interview. (*Id.* at 23). Child admitted that his mother "said some things that you might ask me." (*Id.*) Regarding these topics, Child stated, "But I do not want to talk about that." (*Id.*)

The interviewer reassured Child, "I am not going to make you talk about things that you don't want to talk about." (*Id.* at 24). Child then broached the subject of his interaction with Appellee stating, "All I can say is that someone did something that was not appropriate[.]" (*Id.* at 25). The interviewer attempted to determine how old Child was when the inappropriate incident occurred, but Child only remarked that it occurred when he was

- 7 -

"younger." (*Id.*) Child also explained that he realized that the incident was inappropriate after "Good Touch and Bad Touch Day" at school, and he informed his mother about the incident shortly thereafter. (*Id.* at 26).

Child went on to describe Appellee as his "aunt" and a member of "my mom's dad's family." (*Id.* at 27). Child stated that the incident occurred "one time" when he and Appellee were both living at his grandfather's house. (*Id.* at 28). Child opined that the incident occurred when he "was too young to go in school." (*Id.* at 30). Child claimed that he was in a tent with Appellee outside the house. (*Id.* at 32). Child was reluctant to provide any further details, and the interviewer redirected her questioning. Child went back to discussing what he learned on Good Touch/Bad Touch Day, and he elaborated on what happened after he told his mother about the incident. (*Id.* at 34-38).

Eventually, Child provided details about the incident. First, Child stated that Appellee "said to not tell anyone" about what happened inside the tent. (*Id.* at 39). Then, Child revealed that he needed to go to the bathroom while he was inside the tent with Appellee. (*Id.*) At that point, Appellee "showed an inappropriate part" of her body to Child. (*Id*. at 41). Appellee also "forced" Child to show her an "inappropriate part" of Child's body by pulling down his pants. (*Id.*) The interviewer asked Child about what happened next. Child responded, "That's all I remember." (*Id.*) The interviewer repeated, "Did something else happen in the tent with your aunt?" (*Id.*) Child confirmed,

"No.  After that, she just said, do not tell anyone."  (***Id.***)

The interviewer provided anatomical drawings of a male and female child and asked Child to circle the body parts that were exposed inside the tent.  (***Id.*** at 42).  Child circled the genitalia on each of the drawings.  (***See*** Hearing Exhibit 1, entered 9/8/20, at 3-4).  Again, the interviewer asked Child whether something else happened while he was with Appellee.  Child reiterated, "No.  After that, we just—I left.  …  I think she stayed in there and got her clothing on.  I got my clothing on a lot faster."  (N.T. Interview at 42).  The interviewer added, "Is there something else that you want me to know about her?"  (***Id.*** at 43).  Child answered, "Nope.  But that's all I know that happened about that."  (***Id.***)

At that point, the interviewer informed Child that she needed to take a break and confer with the people in the next room.  (***See id.***)  The break lasted four minutes.  (***Id.*** at 44).  Upon her return, the interviewer sought more details about what happened inside the tent.  The interviewer asked, "Did [Appellee] ask to do something with that part on your body?"  (***Id.***)  Child responded, "Not that I remember of."  (***Id.***)  The interviewer continued, "Did she try to do something with that part on your body?"  (***Id.***)  In the face of this repetitive questioning, Child began to equivocate and stated, "I think so.  I do not know."  (***Id.*** at 45).

Child proceeded to revisit details that he described earlier.  He restated that he needed to go to the bathroom, but Appellee would not let him leave

the tent. (*Id.*) Child believed the incident occurred at night, because he was catching fireflies before entering the tent. (*Id.* at 46). While he was "playing around," Child observed that Appellee "was in the tent like on her phone or something." (*Id.*) Child maintained, "She got out and—well, no. I don't actually remember what happened. But I know it was either day or night." (*Id.*)

Despite Child's repeated statements that he did not remember any other aspect of the incident, the following exchange occurred:

> [INTERVIEWER]:    Okay. You said that she forced your pants down when she looked at the inappropriate part on your body. When she forced your pants down, did a part of her body touch a part on your body?
>
> [CHILD]:                Yes.
>
> [INTERVIEWER]:    Tell me about that.
>
> [CHILD]:                It is kind of like the parts that [are] circled [on the anatomical drawings].
>
> [INTERVIEWER]:    Okay. What part on her body touched the part you circled on your body?
>
> [CHILD]:                On her body, that's the part she touched me with. Yeah, she exactly—these—she forced these two (Indicating) to touch.
>
> [INTERVIEWER]:    Okay. Tell me all about when that happened.
>
> [CHILD]:                That's—I do not remember that.
>
> [INTERVIEWER]:    Okay. When she forced these two parts to touch, how was your body?
>
> [CHILD]:                Really uncomfortable.

[INTERVIEWER]:     Okay.  Were you sitting, standing, lying down, or something else?

[CHILD]:          Sitting.

* * *

[INTERVIEWER]:     Okay.  When she was forcing those two parts to touch, was her body doing something?

[CHILD]:          No.  She was like pulling me closer to her.

[INTERVIEWER]:     Okay.  Tell me about when she was pulling you closer to her.

[CHILD]:          That's all I know—

[INTERVIEWER]:     Okay.

[CHILD]:          —and remember.

[INTERVIEWER]:     Okay.  What made all of that stop happening?

[CHILD]:          I got it.  She forced me to go to the bathroom into her area right here (Indicating).

[INTERVIEWER]:     Okay.

[CHILD]:          That's what happened.

[INTERVIEWER]:     Tell me about how that happened.

[CHILD]:          She made me show—put this inappropriate area (Indicating).

[INTERVIEWER]:     Um-hmm.

[CHILD]:          Into her inappropriate area.

(*Id.* at 46-49).

In evaluating the reliability of Child's statement, the trial court examined the relevant factors enumerated in **Delbridge**. (**See** Opinion and Order, filed September 17, 2020, at 2-7). Regarding Child's consistency in repetition, the court noted that the interview took an undeniable turn after the break in questioning:

> [Child's] statements were occasionally consistent until a specific point during the interview at which time they became wholly inconsistent. The child indicated throughout the first portion of the interview until timestamp 42:47, when the interviewer declared a break, that the incident with [Appellee] involved [Appellee] pulling down or removing [Child's] pants and looking at his "inappropriate part," and that [Appellee] then pulled down or removed her pants and showed him her "inappropriate part." The child was also consistent that nothing happened to a part of either his or [Appellee's] body and that he did not remember anything else occurring.
>
> However, after the interviewer took a break to consult with the investigative team, the tone of the interview changed and the interviewer commenced asking specific and pointed questions that assumed physical contact that the child had not previously disclosed. The child initially responded by indicating that he did not know or did not remember. When the interviewer did not relent, the child began providing statements regarding physical contact which were contradictory at times.
>
> \* \* \*
>
> These statements are not minor inconsistencies or clarifying statements, but responses to specific inquiry by the interviewer. The [c]ourt finds that the statements lacked any consistency and were made due to external influences. Therefore, we find that all statements made by the child after timestamp 42:47 are wholly inconsistent and unreliable.

(**Id.** at 3-4).

Additionally, the court noted that other factors called the reliability of Child's statements into question. The court noted that Child's mother told him that he was going to an appointment to talk to police about the incident with Appellee. (*Id.* at 2-3). Child also admitted that his mother addressed some of the topics that might come up during the appointment. (*Id.* at 6). In light of Mother's disclosures, the court questioned the spontaneity of Child's statements. Further, Child knew that police officers were watching the interview. Thus, the court did not rule out the possibility that the presence of the investigative team "could have inadvertently induced the child to create responses in order to satisfy the interviewer's specific questions when she did not accept the child's responses that he did not remember." (*Id.* at 7).

Our review of the record confirms that before the break in the interview, Child admitted that Appellee "showed an inappropriate part" of her body. (N.T. Interview at 41). Appellee also "forced" Child to show her an "inappropriate part" of Child's body by pulling down his pants. (*Id.*) On multiple occasions thereafter, Child confirmed that this was the extent of the incident. Despite Child's insistence that he did not remember any other inappropriate conduct on Appellee's part, the interviewer continued to pursue this topic after the break. (*See id.* at 44). Although Child reiterated that he could not remember any additional details about the incident, Child eventually disclosed that contact occurred between his and Appellee's genitalia. (*Id.* at 44-46).

On this record, we cannot say that the trial court's exclusion of the post-break statements from Child's interview was "manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality…" ***See Belknap, supra***. The court evaluated the ***Delbridge*** factors and found that the inconsistencies in Child's statements rendered Child's post-break statements unreliable and inadmissible. We decline the Commonwealth's invitation to reweigh the ***Delbridge*** factors in its favor. ***See Lyons, supra***; ***O'Drain, supra***. Because we see no abuse of discretion in the trial court's evidentiary ruling, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/28/2021