J-S24040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY MOODY | : | |
| | : | |
| Appellant | : | No. 1251 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004828-2018

BEFORE:  PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED AUGUST 8, 2022**

Corey Moody (Moody) appeals[1] from the January 10, 2020 judgment of

sentence imposed by the Court of Common Pleas of Philadelphia County (trial

court) following his convictions for aggravated assault, possessing an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Counsel has filed what is essentially a hybrid between a merits and **_Anders_** brief, arguing for relief on one claim and contending that other issues raised by prior counsel are meritless.  **_See Anders v. California_**, 386 U.S. 738 (1967).  This Court has previously recognized that such a brief is improper and that appellate counsel should only brief issues he or she believes to be non-frivolous.  **_Commonwealth v. Morrison_**, 173 A.3d 286, 293 (Pa. Super. 2017).  If the defendant disagrees with counsel's assessment, he or she may challenge appellate counsel's effectiveness through the Post-Conviction Relief Act.  **_Id._** (citing 42 Pa.C.S. §§ 9541 _et seq._).  Accordingly, we only address the issue which counsel has briefed on the merits.  **_See id._**

instrument of crime, simple assault and recklessly endangering another person.[2]  We affirm.

The trial court summarized the relevant facts of the case:

Kacim Bey, hereinafter referred to as "Complainant," testified as follows.  On May 22, 2018, between 6:00 p.m. and 6:30 p.m., Complainant was walking to his house in Philadelphia on 8th Street and Indiana Avenue with his cousin, Devin Jackson.  When Complainant reached the 2900 block of 8th Street, he felt someone grab him around the neck and begin slicing him with a sharp object.  Complainant was struck on his right ear, the left side of his face, the front of his forehead, and his hand after he attempted to push his assailant away from him.  He felt blood running down his face as a result of his injuries.

Complainant identified [Moody] as the individual who attacked him.  [Moody] ran away toward Cambria Street after stabbing Complainant.  Complainant ran toward his car, where he was spotted by his mother, girlfriend, and his cousin's girlfriend, and then driven to Temple University Hospital.  Complainant was treated at the hospital for three to four hours, receiving staples on his head and approximately thirty-five to forty stitches on other parts of his body.  Complainant continued to suffer headaches, small migraines, and numbness in his pinky finger after he was released from the hospital.

Complainant testified that he had known [Moody] for approximately seven years prior to this incident.  He later clarified that he knew [Moody] from his childhood and had last seen him thirteen years ago, when he was twelve years old.  Complainant stated the last time he had a conversation with [Moody] was a couple weeks before the stabbing.  When Complainant was asked about why he was attacked, he stated that it had something to do with his brother, Joseph Bey, who had been targeted in a shooting approximately two years earlier.  Complainant had previously picked his brother up from the police station after his brother had given a statement to police about this shooting.

---

[2] 18 Pa.C.S. §§ 2702(a), 907(a), 2701(a) & 2705.

Complainant said that some of the people involved in the shooting, including [Moody], had sent threats to his brother after he talked to police. Additionally, about a month or two before Complainant was stabbed, Complainant stated that his brother was involved in a physical altercation with one of the individuals sending threats. Because Complainant's brother moved away after this altercation, Complainant believed he was targeted instead. [Moody's] counsel objected to Complainant's testimony about his brother, arguing it was hearsay. The Commonwealth argued that the testimony was being offered to explain "why what transpired, transpired." This Court overruled the objection, stating the testimony was not being offered for its truth. This Court then asked Complainant several questions to establish that his testimony was based off direct knowledge that his brother had given a statement to police.

Complainant was then shown two Instagram posts containing portions of his brother's statement to police. The first post included Complainant's brother's name, Joseph Bey, and text of Joseph Bey giving information about his friends. The second post showed Joseph Bey's statement with the message "niggas want war, but they rats" at the bottom. Complainant testified that he first saw these Instagram posts sometime after November 15, 2017, when Complainant returned home from serving a sentence in state prison. Complainant admitted that he had previously been convicted of theft, unlawful taking, receiving stolen property, and unauthorized use of a motor vehicle and been sentenced to confinement by this Court. Complainant additionally stated that he was on parole at the time of his testimony, and that he had an open criminal case on the date he was stabbed.

Complainant testified that approximately two weeks after the stabbing incident, a former friend of his brother, Carl Walker, came to Complainant's house. He was accompanied by another person, Khalid Jackson, who Complainant knew as Lil' Boozy. Walker told Complainant that [Moody] had not committed the stabbing. Nonetheless, Complainant participated in a police photo array in which he identified [Moody] as the individual who stabbed him. Complainant additionally signed a document identifying [Moody] in which he wrote that it was him "one hundred percent." Complainant had seen [Moody] earlier on the day of the stabbing with Carl Walker, Khalid Jackson, and Richard Green, but recognized that [Moody] was who had stabbed him because he was bigger than the other men and Complainant also saw his face from the side after he was stabbed.

Trial Court Opinion, 12/1/21, at 2-4 (citations omitted).[3]

Moody proceeded to a non-jury trial and was found guilty of the above-mentioned offenses.[4]  The trial court sentenced him to an aggregate of 12.5 to 25 years of incarceration.  Moody filed a post-sentence motion which was denied by operation of law.  He timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.

Moody raises one issue on appeal:  whether the trial court abused its discretion in admitting the Instagram posts into evidence because they had not been authenticated pursuant to Pa. R.E. 901 and the Commonwealth did not establish a link between Moody and the posts.[5]  He argues that while the

_____

[3] Deficiencies in the certified record have hampered our review in this case. Only Kacim Bey's testimony was transcribed and transmitted to this Court. Even though Moody's sole argument on appeal relates to the admissibility of Instagram posts, those posts are also not contained in the certified record. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (citation omitted).  We could deem Moody's claim waived on this basis.  **Id.** at 1277.  However, because the descriptions of the Instagram posts in the notes of testimony are undisputed and Bey's testimony provides sufficient information for our review, we decline to find waiver.

[4] The trial court found Moody not guilty of criminal attempt—homicide and retaliation against a witness.  18 Pa.C.S. §§ 2502, 4953(a).

[5] "Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."  **Commonwealth v. Murray**, 174 A.3d 1147, 1156 (Pa. Super. 2017) (citation omitted).

victim testified that he had personally viewed the posts and knew that they contained Joseph Bey's statement to police, the Commonwealth did not produce any evidence related to the author of the posts or the name of the account from which they were posted. He contends that there was no evidence to suggest that Moody authored the Instagram posts so they could not be used to establish Moody's motive for the attack. Finally, he argues that this error was prejudicial because they portrayed Moody as a violent person.[6]

"Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa. R.E. 901(a). A witness may authenticate evidence through "[t]estimony that an item is what it is claimed to be." Pa. R.E. 901(b)(1). As Moody

---

[6] The Commonwealth contends that this argument is waived because Moody did not object to the introduction of the Instagram posts at trial. Commonwealth's Brief at 8-9. We disagree. Moody objected to testimony regarding the victim's brother when the Commonwealth first broached the subject at trial. Notes of Testimony, 1/14/19, at 17. The ensuing discussion between counsel and the trial court referenced the Instagram posts and the Commonwealth stated it did not know the author of the posts. In allowing the evidence, the trial court stated, "I think that he can testify to the Instagram post. That doesn't mean that the defendant posted it or that they can show that he posted it, but we can proceed from there." *Id.* at 18. Additionally, the trial court thoroughly addressed the authentication issue in its opinion pursuant to Pa. R.A.P. 1925(a). While the objection could have been more clearly stated on the record, the trial court understood the grounds for the objection and was able to consider the argument in the first instance. Accordingly, we proceed to consider the merits of the claim.

recognizes, our case law regarding authentication of social media posts and electronic messages focuses on establishing authorship of such evidence:

> Initially, authentication [of] social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

*Commonwealth v. Danzey*, 210 A.3d 333, 338 (Pa. Super. 2019) (quoting *Commonwealth v. Mangel*, 181 A.3d 1154, 1162 (Pa. Super. 2018) (citations omitted)). However, authentication pursuant to Pa.R.E. 901(a) "generally entails a relatively low burden of proof." *Commonwealth v. Murray*, 174 A.3d 1147, 1157 (Pa. Super. 2017) (citation omitted).

In *Danzey* and *Mangel*, the Commonwealth contended that the defendant had written the electronic messages and needed to adduce sufficient direct or circumstantial evidence to establish authorship. *Danzey*, *supra*; *see also* Pa.R.E. 901(b)(11), *cmt* ("The rule illustrates the manner in which digital evidence may be attributed to the author.").[7] The Commonwealth was required to authenticate the authorship of the messages

---

[7] Rule 901(b)(11) was added to Rule 901 after Moody's trial and was effective October 1, 2020. We have previously held that the newly-amended rule is consistent with prior case law, including *Mangel*, and our disposition here remains the same even without applying the amended Rule. *Commonwealth v. Orr*, 255 A.3d 589, 601 n.3 (Pa. Super. 2021).

because it sought to introduce the messages as substantive evidence of the defendants' guilt. *Danzey*, *supra*, at 336 (introducing the defendant's social media posts deriding and threatening the victim as evidence in prosecution for stalking and harassment); *Mangel*, *supra*, at 1156-57 (seeking to introduce social media posts bragging about physical altercation in prosecution of defendant for aggravated assault, simple assault and harassment).

While Moody focuses his argument on *Mangel* and other cases related to establishing authorship of electronic messages or social media posts, those cases are inapposite here because the Commonwealth did not seek to prove that Moody had authored the Instagram posts. Rather, the Commonwealth introduced the messages to show why the victim believed he had been subject to a retaliatory attack after his brother provided information to the police. The victim's belief about the motive for the attack was relevant to the subsequent investigation and the charge of retaliation against a witness for which Moody was acquitted.

As the proponent of the evidence, the Commonwealth was required to provide "evidence sufficient to support a finding that the item is what the proponent claims it is," and was permitted to do so through "[t]estimony that [the] item [was] what it [was] claimed to be." Pa.R.E. 901(a), (b)(1). The Commonwealth claimed only that the Instagram posts depicted Joseph Bey's statement to police and, in conjunction with the caption "niggas want war, but they rats," led the victim to believe he was targeted in retaliation. Notes of

Testimony, 1/14/19, at 23. It was only required to authenticate the posts for that specific purpose, and it did so through the victim's testimony confirming that he viewed the posts in their original form on Instagram prior to the attack. The victim also testified based on his personal knowledge that the statement depicted in the photos was given by his brother. He then informed police that he believed he had been targeted in retaliation for his brother's cooperation with law enforcement.[8] This testimony was sufficient to authenticate the posts for the limited purposes for which they were admitted at trial. Accordingly, Moody's sole issue on appeal is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2022

---

[8] We observe that Moody was acquitted of the charge of retaliation against a witness. The Instagram posts did not pertain to the elements of the charges of aggravated assault, possessing an instrument of crime, simple assault and recklessly endangering another person for which Moody was convicted. Regardless of the motives for the attack, those charges were made out by the victim's testimony that he recognized Moody as the individual who grabbed him from behind and sliced his head and hand with a sharp object.