J-S06019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
SAMANTHA MCLAUGHLIN   :
  :
Appellant   :   No. 3334 EDA 2017

Appeal from the Judgment of Sentence August 22, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004617-2016

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:           **FILED MAY 12, 2021**

Appellant Samantha McLaughlin appeals from the judgment of sentence imposed following her jury trial conviction of aggravated assault—causing serious injury, aggravated assault—deadly weapon, simple assault—attempt to cause bodily injury, and possession of an instrument of crime.[1]  On appeal, she challenges the weight and sufficiency of the evidence supporting her conviction and argues that the trial court erred when it admitted hearsay evidence and improper leading questions during trial.  We affirm.

We state the facts as set forth by the trial court:

The underlying charges stem from the report that Appellant []
severely lacerated the throat, neck and face of victim, Darlene
Davis when [Appellant] struck the victim over her head and sliced
her neck with a beer bottle on February 14, 2016 inside Fiddler's

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1); 2702(a)(4); 2701(a)(1); and 907 respectively.

Green Tavern located at 7356 Frankford Avenue in the lower Northeast section of Philadelphia. At the time of the attack, the victim had been blissfully dancing in a front corner of the bar unaware of the impending danger.

At trial, a video surveillance tape retrieved from the bar was repeatedly played for the jury which corroborated eyewitness accounts of the assault. That video unequivocally displayed the unabated stalking movement of Appellant from the back of the establishment through a crowd of bar patrons followed by the striking and then stabbing motion upon reaching the victim. Ms. Davis [has] fortunately survived the assault due to the immediate aid of patrons that slowed the bleeding and emergency treatment from responding medics followed by immediate transportation to nearby Aria Hospital, Torresdale Division, where she received life-saving surgery for her injuries. Those critical injuries included severe lacerations to her face and neck coupled with substantial blood loss.

To date, the victim has been disfigured from permanent scarring the length of her throat to her chest. Multiple eyewitnesses and the victim at the scene immediately reported to emergency responders that Appellant was the one who stabbed the victim. The acknowledged motivating factor for the assault stemmed from at least one previous physical altercation between the victim and her relatives with Appellant's relatives.

\* \* \*

. . . Over the course of trial, the Commonwealth introduced compelling varied forms of direct and circumstantial evidence from uniformed police officers, assigned investigators, the victim Darlene Davis and other eyewitnesses. The Commonwealth and the defense presented for full viewing numerous times the recorded video feed that had been obtained from the Fiddler's Green Tavern showing various viewing during the time frames at issue. A broken bottle neck shard of glass that had been recovered among other broken glass pieces from the bar was introduced. Analysts reported that no identifiable fingerprint had been detected upon analysis. The swabs upon portions of the bottle neck for DNA analysis were not analyzed. Witnesses on behalf of Appellant also testified as to their version of events and reflective of their view of Appellant's character. Closing

arguments and the final charges were presented in the morning on May 8, 2016 and the jury returned verdicts later that day.

Trial Ct. Op., 9/7/18, at 1-3.

The jury found Appellant guilty of the aforementioned charges. The trial court ordered a presentence investigation (PSI) report and a mental health evaluation. On August 22, 2017, the court sentenced Appellant to five to ten years of imprisonment followed by five years of probation for aggravated assault—causing serious bodily injury, and one to five years of consecutive confinement for possession of an instrument of crime. The court noted that the charges of simple assault and aggravated assault—deadly weapon both merged with aggravated assault—causing serious bodily injury. Appellant timely filed a post-sentence motion challenging the sufficiency and weight of the evidence.

On September 6, 2017, the trial court denied Appellant's post-sentence motion. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its opinion on September 7, 2018.[2]  *See* Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the evidence was insufficient to sustain the verdicts of aggravated assault, 18 Pa.C.S. § 2702 §§ A, F1, aggravated assault 18 Pa.C.S. § 2702 §§ A, F2, poss instrument of crime w/int., 18 Pa.C.S. § 907 §§ A, M1 and simple assault 18 Pa.C.S. § 2701 §§ A?

---

[2] On January 21, 2019, appellate counsel filed an application to withdraw. The trial court appointed new counsel on September 24, 2020.

2. Whether the verdicts were against the weight of the evidence as the surveillance video clearly illustrates that [Appellant] did not have a weapon, a bottle, in her hand?

3. Whether the verdicts were against the weight of the evidence as the bottle recovered, the alleged weapon used did not have [Appellant's] fingerprints on the bottle?

4. Whether the verdicts were against the weight of the evidence as the bottle recovered, the alleged weapon used did not have any blood on the bottle?

5. Whether the trial court improperly allowed hearsay testimony regarding witnesses testifying that [Appellant's] brother said that [Appellant] committed the crime outside the bar?

6. Whether the trial court improperly allowed hearsay testimony regarding witnesses testifying that people were saying that the defendant committed the crime?

7. Whether the trial court improperly allowed the prosecuting attorney to lead witnesses and/or to testify regarding what the surveillance film demonstrated despite repeated objections by the defense?

Appellant's Brief at 7-8.

**Sufficiency of Identification Evidence Claim**

Appellant's first issue challenges the sufficiency of the identification evidence supporting her conviction. *See id.* at 46, 34. She asserts that the Commonwealth failed to establish that she was the attacker based on the uncertainty of some eyewitnesses and the clarity of the surveillance video. *See id.* at 35-36, 42-43, 45. Appellant claims that there was no physical evidence tying her to the attack because the broken bottle used had no blood or identifiable fingerprints. *See id.* at 37-38. Finally, Appellant argues that the testimony failed to establish that she purposefully used a beer bottle to strike and injure the victim. *See id.* at 49.

- 4 -

We apply the following standard when reviewing a sufficiency claim:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

A person is guilty of aggravated assault if she:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * *

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S. § 2702(a)(1), (4).

A person is guilty of simple assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1).

- 5 -

Finally, a person is guilty of possession of an instrument of crime if she "possesses an instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907 (a). An instrument of crime is defined as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." *Id.* at § 907.

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted).

Appellant's claim relates solely to the sufficiency of the identification evidence. Accordingly, we limit our discussion to the evidence of that element. *See Commonwealth v. Cain*, 906 A.2d 1242, 1244 (Pa. Super. 2006) (declining to address the sufficiency of evidence supporting every element where an appellant only challenges identification evidence).

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations and quotation marks omitted).

Here, in its 1925(a) opinion, the trial court concluded that "each guilty

verdict was amply supported by overwhelming cumulative and corroborating eyewitness testimony and physical evidence of Appellant's liability." Trial Ct. Op. at 7. At trial, the Commonwealth introduced the testimony of Alexis Ortiz who had been dancing with the victim when Appellant approached and then struck the victim across the right side of her head with a bottle. **See** N.T. Trial, 5/2/17, at 9-11. Mr. Ortiz had an unobstructed view of Appellant during the attack and positively picked her photograph from an array shown to him by police.[3]

The Commonwealth also introduced the testimony of Apostolos Vasiliou, who saw Appellant swing the beer bottle at the victim. He did not see the bottle connect with the victim's body, but he testified that immediately after the attack the victim was bleeding from the neck. **See** N.T. Trial, 5/3/17, at 35-36.

The victim's paramour Julio DeLeon testified that after hearing a glass bottle break, he turned around and saw the victim bleeding. He stated that after asking her what happened, "she said Sam hit me in the head" and

_____

[3] Appellant's argument concerning Mr. Ortiz's statement that the photo of Appellant "looked like her" demonstrated uncertainty, and his different descriptions of the color of the bottle with which Appellant struck the victim, relate to the weight of the evidence. **See Commonwealth v. Griffin**, 65 A.3d 932, 939 (Pa. Super. 2013) (stating that an argument as to the "credibility of the Commonwealth's chief witness" is a challenge to the weight, not the sufficiency, of the evidence); **see also Commonwealth v. Davis**, 799 A.2d 860, 864 (Pa. Super. 2002) (reiterating that weight and sufficiency claims "are discrete inquiries").

"pointed towards the door" where Appellant had fled, escaping in a cousin's car before police arrived. *Id.* at 101.

As noted by the trial court,

[a]dditional eyewitness testimony evidence corroborated the positive identification of the Appellant as the assailant, as well as the motive and the deliberate method. These sources included testimony from the victim's friend Natasha McLean; an independent, unbiased bar patron Shawn Horochiwsky; the victim's mother Nancy Davis; and finally by the victim Darlene Davis. Each individual recounted their individual perspectives of the attack that collectively supported the guilty verdicts.

Trial Ct. Op. at 13.

Finally, the Commonwealth also introduced a surveillance video of the attack which depicted Appellant raise her arm upward and downward in a striking motion and then lunging toward the victim's head and neck areas. As the trial court stated:

The only debatable portion of the video was whether the angle and lighting provided a view of a bottle in [Appellant's] hand at the precise moment of striking and lunging. As to that single point, evidence displayed the obvious jagged edge neck injuries along with credible testimony from multiple eyewitnesses and the victim herself along with the presentation of photographs showing the resulting numerous shards of glass left at the scene and the collected broken glass beer bottle neck supported the jury's determination that a beer bottle had been used by Appellant as a deadly weapon to cause this victim serious bodily injury. The decision of the jury as fact finder was fully supported by the cumulative direct and circumstantial evidence presented from all sources.

*Id.* at 9.

Viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, we conclude that there was sufficient evidence proving that Appellant was the perpetrator of the attack. *See Palmer*, 192 A.3d 85, 89; *Orr*, 38 A.3d at 874. Therefore, Appellant's first issue is meritless.

### Weight of The Evidence Claims

In her next three issues, Appellant alleges that the verdicts were against the weight of the evidence because the surveillance video from the bar did not show a bottle in her hand and because broken glass from the bottle did not have either her blood or fingerprints on it. *See* Appellant's Brief at 50. Therefore, Appellant claims she is entitled to a new trial.

It is well settled that

[a] motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has

had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Soto***, 202 A.3d 80, 97 (Pa. Super. 2018) (citation omitted and some formatting altered).

Instantly, the trial court concluded that despite the minor inconsistencies highlighted by Appellant, her weight claims "fail because the cumulative direct and circumstantial evidence presented before the jury overwhelmingly proved Appellant's culpability in every respect." Trial Ct. Op. at 5. We discern no basis to disturb the trial court's ruling denying Appellant's weight of the evidence claims. ***See Soto***, 202 A.3d at 97.

Appellant next claims that the trial court erred in allowing hearsay testimony of Julio DeLeon, who stated: "I asked who hit my fiancé[, the

victim,] in the head with a bottle and her brother said, my sister did." N.T. Trial, 5/3/17, at 107; *see* Appellant's Brief at 56-57. Appellant claims that DeLeon's statement constituted hearsay and did not fall under the excited utterance exception. Specifically, she claims that DeLeon did not sufficiently identify the declarant and could either be Appellant's brother or the victim's brother. Therefore, she alleges the court abused its discretion in applying the excited utterance exception and admitting the testimony. *See* Appellant's Brief at 60.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court . . . [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court over-rides [sic] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations omitted and some formatting altered).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (citation omitted).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable,

- 11 -

or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa. Super. 2019) (citation omitted and some formatting altered).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. ***See*** Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. ***See*** Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." ***Commonwealth v. Charlton***, 902 A.2d 554, 559 (Pa. Super. 2006) (citation omitted).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." ***Id.*** (citation omitted). Pennsylvania Rule of Evidence 803(2) concerns one such exception and defines "excited utterance" as: "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition." Pa.R.E. 803(2).

In the present case, the statement in question came from the testimony of Mr. DeLeon, the victim's fiancé.

[The Commonwealth]: When you went outside, did anybody say anything to you?

\*    \*    \*

[Mr.DeLeon]: I asked who hit my fiancé in the head with a bottle and her brother said, my sister did.

[The Commonwealth]: When you say "her brother," are you talking about Darlene or –

[Mr.DeLeon]: I'm sorry, Samantha's brother said my sister did.

N.T. Trial, 5/3/17, at 106-07.

In admitting the evidence, the trial court concluded that the comment qualified as an excited utterance because it was a statement relating to a startling event made while the declarant was under the stress of the excitement. The court found that the "remark was made within a few moments after [the victim] was struck and during the course of the collective efforts of Appellant's family members to prevent Mr. DeLeon from pursuing the fleeing perpetrator and the angry ensuing shoving match." Trial Ct. Op. at 22.

Upon review, we find that the recent assault amounts to a startling event for purposes of the excited utterance exception, and Appellant's brother's statement was about that event. **See** Pa.R.E. 803(2); **see also Commonwealth v. Gray**, 867 A.2d 560, 571 (Pa. Super. 2005) (holding that a witness who watched the assault of her mother viewed a startling event).

Further, contrary to Appellant's claim, DeLeon clearly identified the declarant as Appellant's brother, who was at the bar during the assault, and made the statement while escorting Appellant away from the bar. Accordingly, we conclude that the trial court did not abuse its discretion when it admitted the statement under the excited utterance exception to the hearsay rule.

In her sixth issue, Appellant claims that the trial court erred when it allowed hearsay testimony from the victim and witness Nancy Davis. However, Appellant fails to identify which statements were inadmissible hearsay. *See* Appellant's Brief at 60-61. Accordingly, because she has failed to properly develop this argument, she has waived this claim.[4] *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (holding that "the failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119") (citation and quotation marks omitted).

In her final issue, Appellant claims that the trial court abused its discretion by allowing the prosecutor to ask leading questions and make improper prosecutorial comments. However, again, Appellant fails to offer any specific incidents of improper leading questions or prosecutorial

---

[4] Moreover, even if Appellant had not waived this claim, we would not find an abuse of discretion in the trial court's conclusion that "each of the admitted hearsay statements made by Nancy Davis and the victim [] during their respective portions of testimony, and as introduced through the other eyewitnesses and the paramedic, who heard them speak immediately after the assault, that [Appellant] was the perpetrator, were similarly admissible as excited utterances." Trial Ct. Op. at 22.

comments. Rather, she simply states "the trial court abused its discretion when it permitted the prosecutor to ask leading questions through the trial which ultimately prejudiced Appellant" and "throughout most of the trial, the prosecutor made comments that were, in substance, his own testimony. This prejudiced the Appellant." Appellant's Brief at 62-63. Appellant then cites to the entirety of the trial transcript. *See id.* Accordingly, because it is likewise not properly developed, Appellant has waived this claim as well.[5] *See Beshore*, 916 A.2d at 1140.

Accordingly, for the aforementioned reasons, Appellant's claims are either meritless or waived. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 5/12/2021*

---

[5] Again, even if not waived, we would agree with the trial court's findings that improperly leading questions, if objected to, were sustained and the prosecutor redirected. *See* Trial Ct. Op. at 23. The trial court never "erroneously allow[ed] any leading questions that caused introduced responses that would have impacted the outcome of this full and fair trial." *Id.*