J-S12039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANUEL MORRIS | : | |
| | : | |
| Appellant | : | No. 1267 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 3, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0006137-2019

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 27, 2023**

Appellant, Manuel Morris, appeals from his aggregate judgment of
sentence of two to four years' imprisonment followed by one year of probation,
which was imposed after a jury convicted him of two counts of indecent assault
and one count of harassment by lewd, lascivious, or obscene language.[1]  For
the reasons set forth below, we affirm Appellant's indecent assault
convictions, but vacate his harassment conviction.

On November 14, 2019, Appellant, a counselor at a Gaudenzia inpatient
drug and alcohol rehabilitation facility, was charged with indecent assault for
incidents of unwanted physical contact with two women who were being

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3126(a)(1) and 2709(a)(4), respectively.

treated at the facility (Victim 1 and Victim 2) and was charged with harassment for inappropriate conversations with a third female patient (Victim 3). The charges were tried to a jury on April 6 and 7, 2022. Six witnesses testified for the Commonwealth, the three victims, Gaudenzia's division director, the victims' counselor at the facility, and the investigating police officer. Appellant testified in his own defense.

The Gaudenzia division director testified that Victim 1 was at the facility from October 16 to November 13, 2019, that Victim 2 was at the facility from October 20 to November 14, 2019, and that Victim 3 was at the facility from October 10 to November 14, 2019. N.T. Trial at 56-58. He testified that Appellant, who was wheelchair bound, was a counselor at the facility at this time, but was not the counselor assigned to Victim 1, Victim 2, or Victim 3. *Id.* at 41-43, 61-62. The division director testified that Gaudenzia did not permit counselors to hug or show affection to patients while they were in treatment and permitted them only to briefly hug a patient when the patient was leaving the facility after treatment was complete or if the patient came back to visit after treatment. *Id.* at 36-37. He also testified that at the time that the victims were at the facility, Gaudenzia did not allow patients to drink caffeinated coffee and generally limited their phone calls to their families to one 10-minute call per week. *Id.* at 44-49, 78-79. The division director testified that on November 6, 2019, the victims' counselor and Victim 2 reported inappropriate touching by Appellant. *Id.* at 58-62.

Victim 1 testified that Appellant invited her to his office to drink coffee and that she went to his office to have coffee five or six times. N.T. Trial at 199-200. She testified that the door was closed when she was in Appellant's office, that she talked with Appellant about her personal life as she would with a counselor, and that nothing happened that made her uncomfortable in any of the visits until her last time in his office. *Id.* at 200-03, 220. Victim 1 testified that the last time that she went to Appellant's office, shortly before November 6, 2019, she became upset for reasons unrelated to Appellant and Appellant asked her if she wanted a hug. *Id.* at 205-07, 221. Victim 1 testified that she said yes and that when she leaned down to Appellant's wheelchair to hug him, Appellant tried to kiss her and kissed her on the neck when she turned her face away. *Id.* at 206-08. Victim 1 testified that she tried to pull away and that Appellant pulled her closer, grabbed her rear end, tried to put his hand in her pants, and sucked on her stomach below her shirt. *Id.* at 206-09. She testified that she told Appellant to stop, that he did not stop, and that she was able to pull away and walked out of his office. *Id.* at 207-10. Victim 1 identified photographs taken by the police of the mark on her stomach from Appellant's sucking. *Id.* at 213-15.

On cross-examination, Victim 1 testified that Appellant messaged her on Facebook messenger. N.T. Trial at 219. After Victim 1 provided a screenshot of her Facebook message to the Commonwealth, the Commonwealth recalled her to the stand. Over Appellant's objection, Victim

- 3 -

1 identified as the message that she received from Appellant a Facebook message with no identifying information as to the sender dated November 14, 2019 and consisting solely of a waving hand, and that screenshot was admitted in evidence. *Id.* at 284-92, 294. Victim 1 testified that at the time that she saw the message after leaving treatment in November 2019, Appellant's picture appeared as the profile picture that accompanied the message. *Id.* at 289-90, 293-94.

Victim 2 testified that Appellant invited her to his office to make extra phone calls to her family and drink coffee. N.T. Trial at 159-60. She testified that the first time that she went to his office, the door was open and nothing improper occurred. *Id.* at 160-63. Victim 2 testified that the second time that she was in Appellant's office, the door was closed and Appellant cupped his hand on her rear end while she was talking to her husband on the phone. *Id.* at 164-67. Victim 2 testified that she pushed his hand away and he then put his hand under the waistband of her sweatpants and pulled her down on him and tried to kiss her. *Id.* at 166-70. She testified that she covered the phone receiver and told him stop and that she ended the phone call, stood up, and walked out the door. *Id.* at 166, 168-70. Victim 2 testified that after she hung up the phone, she told Appellant that he could be fired for this and that Appellant responded, "okay, married woman." *Id.* at 170-71.

Victim 3 testified that while she was at the Gaudenzia facility, Appellant approached her while she was painting, asked her to paint a tattoo, and told

her that he wanted to get her personal information before she left so that he could bring her back and put that tattoo on her. N.T. Trial at 130-33. Victim 3 also testified that one day when she was sitting at a picnic table during her free time, Appellant said to her "hey, sexy" and asked her about her romantic relationships. *Id.* at 134. She testified that this conversation went on for 20 minutes to half an hour and that she believed that she made Appellant aware that she was uncomfortable with the conversation. *Id.* at 144. Victim 3 further testified that later, on a day when she was upset, Appellant invited her to his office, that when she came to his office, he got close to her and asked her what was wrong, and that when she would not tell him, he said, "now, if we were at the club this is what I would do next" and tried to put his arm around her waist. *Id.* at 136-37. Victim 3 testified that she had never told Appellant that it was okay for him to touch her and that she was upset and stood up and walked out of his office, tripping over his wheelchair as she went to the door. *Id.* at 137-40, 147.

The victims' counselor testified that Victim 2 and, subsequently Victims 1 and 3, reported to her on November 6, 2019 that Appellant had touched them inappropriately and that she reported this to the division director. N.T. Trial at 108-11. The police officer testified that Gaudenzia reported the assaults on November 6, 2019 and testified concerning his interviews of the victims and his investigation, including photographing the mark on Victim 1's abdomen. *Id.* at 233-47. The officer testified that Appellant agreed to be

interviewed and that Appellant denied knowing Victim 3, admitted that Victim 1 and Victim 2 came to his office for coffee, and denied that he had any physical or romantic contact with Victim 1 or Victim 2, but said that both Victim 1 and Victim 2 had hugged him. *Id.* at 252-58.

Appellant testified that he let patients drink coffee in his office and that other Gaudenzia personnel, including the division director and the victims' counselor, knew that. N.T. Trial at 307, 309. With respect to Victim 3, he testified that he discussed her artwork and tattoos with her and that these conversations were professional and based on her interests and denied that he ever called her "sexy," said what he would do if he were at a club, or discussed bringing her back for a tattoo. *Id.* at 308-11. Appellant testified that he talked to Victim 1 on multiple occasions and let her look at her Facebook account on his phone, but denied that he grabbed her or sucked on her stomach. *Id.* at 312-15, 343. He also denied that he sent Victim 1 the November 14, 2019 Facebook message. *Id.* at 323-24. Appellant testified that Victim 2 was in his office to make phone calls, but testified that he was doing paperwork while she was on the phone and denied that he groped her or ever touched her inappropriately. *Id.* at 315-18.

On April 7, 2022, the jury found Appellant guilty of all three charges. N.T. Trial at 410-11. On August 3, 2022, the trial court sentenced Appellant to consecutive terms of one to two years' incarceration for the indecent assault convictions and a consecutive term of one year of probation for the

harassment conviction, resulting in an aggregate sentence of two to four years' incarceration followed by one year of probation. N.T. Sentencing at 12-13; Sentencing Order. This timely appeal followed.

Appellant raises the following three issues in this appeal:

1. Whether the trial court erred in granting the Commonwealth's objection to relevant questioning about how residents responded to [Appellant]'s affections, when the purpose of the question was to rebut that the touching was done for sexual gratification?

2. Did the trial court err in admitting Facebook messenger posts when the screenshots lacked proper foundation to establish it was [Appellant] who sent those messages?

3. Was there insufficient evidence to establish the offense of harassment when the sole evidence of harassment was one hip touch and calling the complainant "sexy," which would be insufficient to establish lewd, lascivious or obscenity?

Appellant's Brief at 6 (suggested answers omitted).

We review Appellant's first issue on an abuse of discretion standard. *Commonwealth v. Bowens*, 265 A.3d 730, 746 (Pa. Super. 2021) (*en banc*); *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015). The question that is the subject of this claim of error, asked by Appellant's counsel to the Gaudenzia division director in his cross-examination, was whether the division director was aware "whether or not any of [Appellant]'s previous clients had ever come back to him and thanked him for the counseling and treatment that he provided?" N.T. Trial at 97. The Commonwealth objected to this question, and the trial court sustained the objection on the ground that the information sought was not relevant to any

issue in the case. *Id.*; Trial Court Opinion at 6-7. That ruling was a proper exercise of the trial court's discretion.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and that fact is material to an issue in the case. Pa.R.E. 401; ***Commonwealth v. Sami***, 243 A.3d 991, 998 (Pa. Super. 2020); ***Talbert***, 129 A.3d at 539. Whether Appellant was a competent counselor and other patients were happy with his counseling and treatment was not material to whether he assaulted Victim 1 or Victim 2 or harassed Victim 3 or to any element of indecent assault or harassment. Appellant argues that he sought to show that Appellant's physical contact with patients was not for purposes of sexual gratification, which was material to one of the elements of the indecent assault charges. That argument is without merit. While incidents of hugging other patients might be relevant to show that the physical contact in mere hugging was not done for purposes of sexual gratification, the indecent assault charges against Appellant were not based on evidence that he hugged Victim 1 or Victim 2. Rather, both victims testified that he did something far different from hugging them. Whether Appellant hugged other patients without any sexual intent has no tendency to show lack of sexual intent with respect to the very different acts at issue here of attempting to kiss, grabbing a person's rear end, reaching into her pants, and sucking on her stomach.

In his second issue, Appellant argues that admission of the Facebook message screenshot was error because the Commonwealth did not authenticate it as having been sent by Appellant. Electronic or digital evidence must be authenticated before it can be admitted in evidence. Pa.R.E. 901(a), (b)(11); ***Commonwealth v. Jackson***, 283 A.3d 814, 818 (Pa. Super. 2022); ***Commonwealth v. Danzey***, 210 A.3d 333, 337-38 (Pa. Super. 2019); ***Commonwealth v. Mangel***, 181 A.3d 1154, 1158-59 (Pa. Super. 2018). The burden of proof for authentication requires only that the proponent of the evidence "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a); ***Bowens***, 265 A.3d at 759 (quoting Pa.R.E. 901(a)). Pennsylvania Rule of Evidence 901 provides that digital evidence, which includes social media communications, may be authenticated by either

>    (A) direct evidence such as testimony of a person with personal knowledge; or
>
>    (B) circumstantial evidence such as:
>
>        (i) identifying content; or
>
>        (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11) & Comment to Pa.R.E. 901(b)(11).

The fact that the defendant's picture appears on a social media posting or message can be sufficient to authenticate the posting or message if the identity of the defendant as the author is also corroborated by other evidence.

*Jackson*, 283 A.3d at 819 (showing that social media accounts where evidence was found had pictures of defendant and had similar content to account that defendant admitted owning was sufficient to authenticate accounts as owned by defendant); *Danzey*, 210 A.3d at 339-40 (evidence that defendant's picture was the profile picture on accounts was sufficient to show that she owned the social media accounts that published the posts and in conjunction with content that referenced circumstances between defendant and victim was sufficient to authenticate the posts as authored by defendant); *Jackson v. Williams*, No. 56 WDA 2022, slip op. at 10, 12 (Pa. Super. August 2, 2022) (unpublished memorandum) (Facebook posts were sufficiently authenticated where it was shown that account had defendant's picture and a version of defendant's name and the posts had similarities to other communications by defendant); *Commonwealth v. Johnston*, 1651 MDA 2018, slip op. at 6-8 (Pa. Super. November 14, 2019) (unpublished memorandum) (Facebook messages were sufficiently authenticated where defendant's picture and name appeared next to the messages and the messages referred to plans that the defendant admitted that he and the recipient had). In contrast, the mere fact that a social media account has the defendant's name and pictures of the defendant without more is insufficient to authenticate posts on that account as authored by the defendant. *Mangel*, 181 A.3d at 1162-64.

Here, the only evidence that the Facebook message was sent by Appellant was Victim 1's testimony that his picture was the profile picture when she opened the message in November 2019. N.T. Trial at 289-90. Nothing else in the message or in any witness's testimony showed any connection between Appellant and the Facebook message. Victim 1 did not know what username appeared with the message. *Id.* at 289. In addition, the content of the message consisted only of a waving hand and did not reference or include anything concerning Appellant or his interactions with Victim 1 that would support a conclusion that Appellant was the author of the message. *Id.* at 290-91. We therefore conclude that the Commonwealth did not sufficiently authenticate the screenshot of the Facebook message and that the trial court erred in admitting it in evidence. Indeed, the trial court in its opinion does not contend that the Facebook message screenshot was sufficiently authenticated and asserts only that any error in admitting the document was harmless. Trial Court Opinion at 7. The Commonwealth likewise does not point to anything that it contends was sufficient to authenticate the document and asserts that any error was harmless. Appellee's Brief at 5-6.

A judgment can be sustained despite the erroneous admission of evidence if the error could not have contributed to the verdict. *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015); *Commonwealth v. Radecki*, 180 A.3d 441, 461 (Pa. Super. 2018). An error

is harmless beyond a reasonable doubt and reversal is not required where the evidence in question did not prejudice the defendant or any prejudice was *de minimis*, where the evidence in question was cumulative of other, substantially similar evidence that was properly admitted, or where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect was so insignificant by comparison that the error could not have contributed to the verdict. **Poplawski**, 130 A.3d at 716; **Commonwealth v. Hairston**, 84 A.3d 657, 671-72 (Pa. 2014); **Radecki**, 180 A.3d at 461.

The Commonwealth argues and the trial court contends that the admission of the Facebook message screenshot was harmless because the evidence of Appellant's guilt was overwhelming. We do not agree. For erroneous admission of evidence to be harmless on this basis, the overwhelming evidence of guilt must be uncontradicted. **Commonwealth v. Fulton**, 179 A.3d 475, 493-94 (Pa. 2018). In this case, the evidence that Appellant assaulted Victim 1 was her testimony and whether he was guilty of that assault depended on the credibility of her testimony, which Appellant disputed. Where, as here, a case turns on the credibility of conflicting witnesses, erroneous admission of evidence cannot be held harmless based on the conclusion that the other evidence of guilt was overwhelming. **Commonwealth v. Rivera**, _ A.3d _, _, No. 22 MAP 2022, slip op. at 32-33 (Pa. June 21, 2023). We also cannot conclude that the evidence that Appellant contacted Victim 1 by Facebook message was completely non-prejudicial or

that any prejudice was *de minimis*. The Commonwealth specifically argued in its closing that the evidence that Appellant sent Victim 1 a Facebook message showed that he was trying to discourage her from pursuing criminal charges. N.T. Trial at 395-96.

The issue here, however, is not whether the admission of evidence that Appellant sent Victim 1 a Facebook message was harmless. That evidence was brought out by Appellant, not the Commonwealth, and Appellant did not move to strike this testimony. N.T. Trial at 219. Rather, the erroneously admitted evidence was only the screenshot of the Facebook message, and the issue is whether the admission of that document was harmless in light of the other evidence, including Victim 1's testimony that she saw that Appellant had messaged her when she accessed her cell phone after she left the facility. We conclude that given the testimony concerning the Facebook message that Appellant elicited, any prejudice from admission of the screenshot was *de minimis*. The content of the message that the screenshot showed was itself innocuous, as it consisted only of a waving hand, and did not contain any sexual content or any reference to or admission concerning the assault. **Id.** at 290-91. In addition, the screenshot did not contain any information connecting the message to Appellant; it contained no identification of the sender and its connection to Appellant was dependent entirely on Victim 1's credibility. **Id.** at 289-91, 294. Because the screenshot added nothing prejudicial to Appellant concerning his Facebook contact with Victim 1 that

had not already been admitted without objection, the error is harmless beyond a reasonable doubt and is not grounds for reversal of any of Appellant's convictions. **Hairston**, 84 A.3d at 672 (where testimony concerning defendant's attempted escape had been admitted without objection, any error in admitting photographs of escape location was harmless because the photographs added nothing prejudicial).

Appellant's third and final issue challenges his harassment conviction on sufficiency of the evidence grounds.

> Evidence is sufficient if "it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Because sufficiency of the evidence is a question of law, the standard of review is *de novo*, and the scope of review is plenary. A reviewing court views all the evidence from trial in the light most favorable to the Commonwealth as verdict winner, including the benefit of all reasonable inferences drawn from the evidence.

**Commonwealth v. Coniker**, 290 A.3d 725, 733-34 (Pa. Super. 2023) (citations omitted) (quoting **Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000)).

Appellant was convicted of harassment by lewd, lascivious or obscene language. The Crimes Code defines this offense as follows:

> (a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

>         *                *                *

> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]

- 14 -

18 Pa.C.S. § 2709(a)(4). Appellant contends that the Commonwealth failed to prove two elements of this offense: 1) that he acted with intent to harass, annoy, or alarm in his conduct toward Victim 3 and 2) that those actions constituted lewd, lascivious, or obscene communications.[2] We agree that the evidence at trial was insufficient to prove that Appellant communicated any lewd, lascivious, or obscene words, language, drawings or caricatures in his interactions with Victim 3.

The communications that have been held to be "lewd," "lascivious," or "obscene" under the criminal harassment statute are references to or depictions of sexual activity or intimate parts of the body, accusations that a person is sexually promiscuous or has a sexually transmitted disease, and the directing of obscenities at a person. *Danzey*, 210 A.3d at 340-41 (upholding Section 2709(a)(4) harassment conviction based on social media posts calling victim a whore who did not use condoms and might have AIDS); *Commonwealth v. Cox*, 72 A.3d 719, 720-22 & n.4 (Pa. Super. 2013) (Facebook posting that 15-year-old girl had a sexually transmitted disease and was "spreading her legs" was lewd communication); *Commonwealth v. Hartzell*, 988 A.2d 141, 144 (Pa. Super. 2009) (evidence that defendant

---

[2] While Section 2709(a)(4) also applies to threatening communications, the jury in this case was charged only on lewd, lascivious, and obscene communications and the conviction was not based on a claim that any threatening communication was proven. N.T. Trial at 406-07; Trial Court Opinion at 9.

shouted obscenities at victim was sufficient to support harassment conviction); ***Commonwealth v. Darrah***, No. 500 WDA 2021, slip op. at 2-5, 8-9 (Pa. Super. November 29, 2021) (unpublished memorandum) (statements calling victim a whore and asking her whether she performed oral sex on women were "obscene, lewd statements" sufficient to support harassment conviction); ***Commonwealth v. Brooks***, 240 A.3d 968, slip op. at *1 & trial court op. at 6-8, 17 (Pa. Super. 2020) (unpublished memorandum) (Facebook postings of photographs of sex act and genitalia and accompanying sexual comments were lewd, lascivious, and obscene communications); ***Commonwealth v. D'Adderio***, No. 833 MDA 2018, slip op. at 2-3, 8 (Pa. Super. June 17, 2019) (unpublished memorandum) (sexualized language and references to victim's sexual activity were lewd communications). ***See also Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees***, 52 A.3d 1117, 1118-19, 1125 n.12 (Pa. 2012) (noting that sexually explicit comments directed at co-worker and request to perform oral sex on her could constitute criminal harassment). In interpreting a predecessor harassment statute, this Court held that the terms "lewd, lascivious, or indecent" were limited to words or language of a sexual nature. ***Commonwealth v. Fenton***, 750 A.2d 863, 866 (Pa. Super. 2000).

In this case, the Commonwealth presented no evidence that Appellant made any statements to Victim 3 concerning sex acts, anyone's private parts,

or anyone's sexual behavior or that he used obscenities or words or language of a sexual nature. Victim 3 testified that Appellant talked with her about a tattoo and putting the tattoo on her after she was discharged, greeted her once with the words "hey, sexy" and asked her about her romantic relationships, and on another occasion said, "now, if we were at the club this is what I would do next" and tried to put his arm around her waist. N.T. Trial at 130-37, 144, 146-48. There was no evidence that the conversation concerning the tattoo contained any sexual content. Victim 3 testified that the tattoo in question was an image of a butterfly and that the tattoo was designed to be placed on her arm, not on an intimate part of her body. *Id.* at 130-33. A conversation about romantic relationships could be lewd, lascivious, or obscene if it included discussion of sex acts or suggestions of promiscuity. Victim 3, however, did not testify that the conversation about romantic relationships included any details concerning sex acts or sexual practices, as opposed to discussion of whether she had any spouse or romantic partner and whether she was happy in her romantic relationships. *Id.* at 134, 144.

The statements "hey, sexy" and "now, if we were at the club this is what I would do next" are likewise not sexual or obscene language. The term "sexy" as applied to a person is not a reference to or description of sexual activity. Indeed, the dictionary definition of "sexy" includes "generally attractive or interesting." *Merriam-Webster's Collegiate Dictionary* at 1141

(11th Ed. 2003). The only conduct in which Appellant was engaging when saying what he would do next was attempting to put his arm on Victim 3's waist, not touching an intimate part of her body or suggesting a sex act, and Victim 3 testified that Appellant said nothing additional about what he would do. N.T. Trial at 137, 140.

We recognize that Appellant's conduct toward Victim 3 was highly offensive and improper given the treatment situation in which it occurred. But the harassment offense of which Appellant was convicted criminalizes harassment by lewd, lascivious, and obscene language and depictions regardless of the setting or frequency of the communications, not improper institutional or employment conduct or conduct that becomes harassing only if it occurs repeatedly. Other sections of the harassment statute criminalize harassment by repeated offensive conduct that has no legitimate purpose. 18 Pa.C.S. § 2709(a)(3), (7). Appellant's harassment conviction, however, cannot be sustained under those provisions, as Appellant was charged and convicted only under Section 2709(a)(4).

Because Appellant's claims of trial error both fail, we affirm his indecent assault convictions and his judgments of sentence for those convictions. Because the evidence was insufficient to prove all of the elements of the

harassment offense of which Appellant was convicted, we vacate Appellant's harassment conviction and his judgment of sentence for that conviction.[3]

Judgments of sentence for indecent assault affirmed. Judgment of sentence for harassment vacated.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>07/27/2023</u>

---

[3] Ordinarily, when we vacate a sentence imposed to run consecutively to other undisturbed sentences, we vacate the entire judgment of sentence and remand for resentencing because the court's sentencing scheme is disrupted. That is unnecessary here, however, because the indecent assault sentences are maximum sentences, 18 Pa.C.S. § 3126(b)(1); 18 Pa.C.S. § 1104, and the trial court already ordered that those sentences run consecutively. N.T. Sentencing at 12-13; Sentencing Order. There is therefore no change that the trial court could make to Appellant's sentence to adjust for the vacating of the harassment sentence.