J-S28041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN EDWIN PERRY JR. | : | |
| | : | |
| Appellant | : | No. 1848 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 14, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005060-2023

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:            **FILED: OCTOBER 28, 2025**

Appellant, Bryan Edwin Perry Jr., appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for two counts of intimidation of witnesses or victims and one count each of aggravated assault, false imprisonment, kidnapping, strangulation, unlawful restraint, and unauthorized use of automobiles.[1] We affirm.

The trial court's opinion set forth the relevant facts of this appeal as follows:

> In September of 2023, Tednika McWhite ("McWhite") was residing at 2228 Logan Street in the City of Harrisburg. In June of that year, McWhite had begun an intimate relationship with [Appellant], who lived across the street

---

[1] 18 Pa.C.S.A. §§ 4952(a)(2), (3), 2702(a)(1), 2903(a), 2901(a)(3), 2718(a)(1), 2902(a)(1), and 3928, respectively.

with his sister.

On September 2, 2023, McWhite called 911 and reported that she had been assaulted. Officers from the Harrisburg Bureau of Police responded to the scene, questioned McWhite, and photographed her injuries. McWhite had substantial injuries to her face. Her left eye was nearly shut from significant swelling. Additionally, the police observed scratches on her neck, bite marks on her arm, swollen lips, difficulty breathing, and a scratchy voice.

McWhite provided the police with a written statement in her own handwriting in which she identified [Appellant] as her assailant. In the statement, she explained that the previous evening, September 1st, [Appellant] asked her to take him to get something to eat but she refused. [Appellant] then grabbed McWhite by her throat, threw her into the passenger seat of her vehicle, and drove her through Harrisburg, including to secluded areas. For the next several hours, [Appellant] frequently hit McWhite, bit her, grabbed her [h]air, and continuously assaulted her. She described her injuries as being a swollen eye, bite marks in several places, scratches, and bruised lips.

Body cameras worn by the responding Officers recorded McWhite's more detailed explanation of what had transpired. [Appellant] became visibly agitated when she refused to drive him for food. While driving her around the city, [Appellant] told McWhite that he was kidnapping her and taking her to Baltimore, and that she would not be going home. [Appellant] repeatedly punched McWhite in the face as he drove and sometimes would stop at random places to beat her.

McWhite's electronically recorded statements on the body camera footage described [Appellant's] specific actions of choking her. She said that [Appellant] strangled her with two hands so that she could not breathe. [Appellant] choked her at least two times for up to ten seconds. The amount of force that … [Appellant] used when he was choking her was a seven or eight on a scale of one to ten. When McWhite told [Appellant] that she could not breathe, he responded "So what?" Following the assault, McWhite had difficulty swallowing.

At around 4:00 a.m., McWhite fled the vehicle when she saw her cousin at a gas station at 7th and Maclay Streets. Her cousin brought her home and checked her house before entering because McWhite did not feel safe. [Appellant], who stands 6'4" and weighs approximately 200 pounds, is substantially larger than McWhite.

On November 30, 2023, McWhite appeared before a Dauphin County Grand Jury and testified under oath, in part, as follows:

> Q: Did you ever talk to Tisha Barber about messages you received via Facebook Messenger or any other service from [Appellant] soon after you were injured?
>
> A: Yes.
>
> Q: And were those texts about images of guns or bulletproof vests?
>
> A: They were, yeah. I told her about those, yeah.

Tisha Barber ("Barber"), a very close friend for more than ten (10) years who was a like a sister to McWhite, confirmed that she received the above-described photograph. She further testified that McWhite interpreted the message as an attempt to intimidate her and that it scared her. In the text exchange between McWhite and Barber that followed the transmission of the photograph, McWhite alleged that her attacker lived across the street from her.

(Trial Court Opinion, filed 2/14/25, at 3-5) (record citations and most quotation marks omitted).

On December 21, 2023, the Commonwealth filed a criminal information charging Appellant with offenses related to the assault. Following trial, a jury convicted Appellant of aggravated assault, false imprisonment, two counts of intimidation of witnesses or victims, kidnapping, strangulation, unlawful

- 3 -

restraint, and unauthorized use of automobiles. On November 14, 2024, the court sentenced Appellant to an aggregate term of fifteen and one-half (15½) to thirty-one (31) years' imprisonment. Appellant timely filed a post-sentence motion on November 24, 2024. In the motion, Appellant challenged the sufficiency of the evidence supporting his convictions, and he moved for judgment of acquittal and a new trial. By order entered November 25, 2024, the court denied the post-sentence motion.

Appellant timely filed a notice of appeal on December 20, 2024. On December 27, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on January 16, 2025.

Appellant now raises two issues for this Court's review:

> Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient [evidence] to sustain a guilty verdict on all counts where [Ms. McWhite] testified it was another man who caused her injury.
>
> Whether the trial court erred in admitting hearsay testimony, to include testimony and text messages, as a prior consistent and prior inconsistent statement.

(Appellant's Brief at 4).

In his first issue, Appellant advances various arguments challenging the sufficiency of the evidence supporting his convictions. First, Appellant emphasizes that Ms. McWhite's testimony established that Appellant was not the perpetrator. Appellant contends that Ms. McWhite

- 4 -

> testified at trial she was getting high with TT.[2]  TT smacked her, not Appellant.  TT struck her in the face multiple times, not Appellant.  TT jerked her by her neck, not Appellant.  TT pulled her hair, not Appellant.  TT bit her, not Appellant.

(**Id.** at 11-12) (record citations omitted).  In light of this testimony, Appellant posits that the Commonwealth failed to establish that Appellant committed the offenses at issue.

In addition to his argument challenging the identity of the perpetrator, Appellant maintains that the Commonwealth did not prove all statutory elements of the offenses.  Regarding aggravated assault, Appellant asserts that the perpetrator did not attempt to inflict a serious bodily injury, and Ms. McWhite did not suffer such injury.  As to witness intimidation, Appellant insists the text message with the images of a bulletproof vest and firearm "did not include threats or intimidation."  (**Id.** at 17).  "These pictures were interpreted by the Commonwealth, not [Ms. McWhite], to appear threatening in nature."  (**Id.**)  For the offense of kidnapping, Appellant claims the perpetrator did not unlawfully move Ms. McWhite a substantial distance.  Finally, as to strangulation, Appellant claims that "[t]here was no medical evidence presented to support a finding that [Ms. McWhite's] neck has been compressed or her breathing was impeded[.]"  (**Id.** at 18).  Appellant concludes that the Commonwealth presented insufficient evidence to support

---

[2] At trial, Ms. McWhite recanted her prior statements identifying Appellant as her assailant.  Instead, she testified that the actual perpetrator was an individual from Baltimore named "TT."  (**See** N.T. Trial, 8/12-14/24, at 47).

his convictions. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines aggravated assault, in relevant part, as follows:

**§ 2702.  Aggravated assault**

- 6 -

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). Additionally, the Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Section 4952 of the Crimes Code provides:

**§ 4952. Intimidation of witnesses or victims**

**(a) Offense defined.**—A person commits an offense if, with the intent to or with knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

\* \* \*

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(2), (3).

Section 2901 of the Crimes Code provides:

**§ 2901. Kidnapping**

**(a)** **Offense defined.**—Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

\* \* \*

(3) To inflict bodily injury on or to terrorize the victim or another.

18 Pa.C.S.A. § 2901(a)(3).

Section 2718 of the Crimes Code provides:

**§ 2718.  Strangulation**

**(a)** **Offense defined.**—A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck[.]

18 Pa.C.S.A. § 2718(a)(1).

A witness' prior inconsistent statement that identified the defendant as the perpetrator is sufficient to allow a jury to conclude that the defendant committed the crimes at issue. *See Commonwealth v. Montgomery*, 861 A.2d 304, 307-08 (Pa.Super. 2004).

> The general rule is that a prior inconsistent statement of a declarant is admissible to impeach the declarant.  Prior inconsistent statements also can be admitted as substantive evidence provided the declarant testifies at trial and is subject to cross-examination concerning the statement and one of the following is true: 1) the prior inconsistent statement was given under oath subject to the penalty of perjury at a trial, hearing, deposition, or other proceeding;

- 8 -

2) the prior inconsistent statement is contained within a signed writing adopted by the declarant; and/or, 3) the rendition of the statement offered is a verbatim contemporaneous recording of an oral statement.

***Commonwealth v. Henkel***, 938 A.2d 433, 442-43 (Pa.Super. 2007), *appeal denied*, 598 Pa. 756, 955 A.2d 356 (2008).

Instantly, Ms. McWhite testified at trial that TT was the perpetrator of the assault. Ms. McWhite asserted that TT drove her around, punched her, choked her, and pulled her hair. Ms. McWhite claimed that she did not previously identify TT because she felt "embarrassed" because she "was doing drugs" at the time of the incident. (***See*** N.T. Trial at 54, 55). Moreover, Ms. McWhite testified that Appellant "agreed that he would take the blame" for TT's crimes to protect Ms. McWhite's image. (***See id.*** at 101).

In response, the prosecutor confronted Ms. McWhite with her prior statements identifying Appellant as the assailant. Initially, the prosecutor introduced Ms. McWhite's handwritten statement to the police. (***See*** Commonwealth's Trial Exhibit 2). In it, Ms. McWhite admitted:

> [Appellant] asked me to take … him to get something to eat. I refused several times. He grabbed me by my throat, threw me in the passenger seat, driving me back through the city, frequently hitting me, talking to me, taking me to secluded areas, continuously assaulting, biting my fingers several times for one to three hours I was in the vehicle, grabbing my hair….

(N.T. Trial at 63). The prosecutor also played the oral statements from Ms. McWhite that were captured on the responding officers' body cameras. Again, Ms. McWhite asserted that Appellant threw her into the passenger seat,

punched her in the head, told her that he was kidnapping her, and drove her around for several hours to secluded places. (*See id.* at 67-69).

The prosecutor subsequently questioned Ms. McWhite about her sworn grand jury testimony. (*See* Commonwealth's Trial Exhibit 16). Before the grand jury, Ms. McWhite positively identified Appellant as the perpetrator. Nevertheless, in responding to the prosecutor's initial question about the identification, Ms. McWhite claimed that she did not remember identifying Appellant. The prosecutor then used the transcript of the grand jury proceeding to refresh Ms. McWhite's recollection. After reviewing the transcript, Ms. McWhite confirmed that she had identified Appellant as the perpetrator in front of the grand jury. (*See* N.T. Trial at 98). Here, the jury was free to utilize the prior inconsistent statements to impeach Ms. McWhite, as well as for substantive evidence regarding Appellant's identity as the perpetrator. *See Henkel, supra*. We conclude that the prior inconsistent statements also provided sufficient evidence to support the jury's finding that Appellant committed the offenses. *See Montgomery, supra*.

Regarding Appellant's remaining sufficiency challenges, the Commonwealth demonstrated that Ms. McWhite sustained serious bodily injuries. In addition to McWhite's testimony about the attack, Harrisburg Police Officer Jeffrey Teeter described Ms. McWhite's condition after the assault:

> She had substantial injuries to her face. The left side of her
> face, her eye was almost pasted shut from the swelling. She

had scratches on her neck, bite marks on her arms. Her lips were kind of swollen. You know, she had some difficulty breathing. Her voice was kind of scratchy.

(*See* N.T. Trial at 262-63). The Commonwealth also presented photos of Ms. McWhite's swollen left eye and the wounds on her neck. (*See* Commonwealth's Trial Exhibit 1). This evidence established that Ms. McWhite suffered "impairment of the function" of various body parts. *See* 18 Pa.C.S.A. § 2301.

The Commonwealth also established that Appellant intimidated Ms. McWhite with the intention of soliciting false testimony or having her withhold testimony. During trial, the Commonwealth introduced portions of Ms. McWhite's prior testimony from the grand jury proceeding.[3] At that time, Ms. McWhite testified that she informed Appellant that she had received a grand jury subpoena, and Appellant asked her to tell the grand jury that he did not attack her. (*See* N.T. Trial at 305-06). Further, Appellant told Ms. McWhite that "they can't make you talk." (*Id.* at 306). Also during trial, Tisha Barber detailed a discussion she had with Ms. McWhite, wherein Ms. McWhite explained that Appellant sent her images of a firearm and bulletproof vest. According to Ms. Barber, Ms. McWhite "was scared," and she "felt that [Appellant] was trying to intimidate her." (*Id.* at 228). This evidence

_____

[3] The Commonwealth utilized one of its law enforcement witnesses, Dauphin County Detective Rachel Mandrusiak, to read the relevant portions of Ms. McWhite's grand jury testimony into the record. (*See* N.T. Trial at 301-07).

demonstrated Appellant's attempts to have Ms. McWhite withhold or provide false testimony.  *See* 18 Pa.C.S.A. § 4952(a)(2), (3).

As for Appellant's challenge to the kidnapping conviction, Ms. McWhite's statements to the police and grand jury indicated that Appellant confined her to the passenger seat of an automobile.  Over the course of several hours, Appellant drove Ms. McWhite around Harrisburg and assaulted her.  Such evidence established that Appellant unlawfully removed and confined Ms. McWhite with the intention of inflicting bodily injury.  *See* 18 Pa.C.S.A. § 2901(a)(3).

Finally, Ms. McWhite told police that Appellant choked her with two hands so that she could not breathe.  The force Appellant applied when choking Ms. McWhite "was a seven or an eight on a scale of one to ten." (*See* N.T. Trial at 76).  When Ms. McWhite told Appellant that she could not breathe, Appellant responded, "So what?" (*See id.* at 76).  Thus, the Commonwealth established that Appellant intentionally impeded the victim's breathing by applying pressure to her throat.  *See* 18 Pa.C.S.A. § 2718(a)(1).  Based upon the foregoing, sufficient evidence supported Appellant's convictions, and he is not entitled to relief on his first issue.

In his second issue, Appellant focuses on a series of questions posed to Ms. Barber during her direct examination.  Specifically, the prosecutor asked Ms. Barber about the text messages she received from Ms. McWhite on the night of the assault.  Appellant maintains that the text messages were

hearsay, which the court erroneously admitted as prior consistent and inconsistent statements. In support of this argument, Appellant asserts:

> The Commonwealth did not confront [Ms. McWhite] with the text messages and instead confronted Barber to read information purportedly from [Ms. McWhite]. The trial court not only allowed Barber to testify as to text messages, but as to statements made by [Ms. McWhite] and [Ms. McWhite's] opinion.

(Appellant's Brief at 20). For these reasons, Appellant concludes that the court abused its discretion by permitting Ms. Barber's testimony. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court … and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Belknap***, 105 A.3d 7, 9-10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

- 13 -

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal citation and quotation marks omitted).

Hearsay is an out-of-court statement made by a declarant, which a party seeks to offer into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). Generally, hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa.Super. 2006), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (2006).

"Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Id.*

> It is long settled that a prior inconsistent statement may be used to impeach a witness. Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability.

*Commonwealth v. Watley*, 153 A.3d 1034, 1040 (Pa.Super. 2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017) (internal citations and quotation marks omitted).

Pennsylvania Rule of Evidence 803 provides another exception to the hearsay rule:

> **Rule 803.    Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant Is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> *    *    *
>
> **(3)    Then-Existing Mental, Emotional, or Physical Condition.**  A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

Our Supreme Court has explained:

> Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception. Axiomatically, and by its unambiguous terms, the exception renders admissible only those statements that reflect the declarant's then-existing state of mind ... or condition, Pa.R.E. 803(3), not someone else's state of mind or condition.  Nothing in the plain terms of the exception would allow, for instance, a party to introduce an out-of-court statement of one person to prove the intent, motive, feelings, pain, or health of another person.  The bounds of

> the exception are limited to the then-existing state of mind of the declarant only.

*Commonwealth v. Fitzpatrick*, 667 Pa. 447, 481, 255 A.3d 452, 472 (2021) (internal citations and quotation marks omitted).

Instantly, Ms. Barber's direct examination commenced with her explaining that Ms. McWhite sent text messages to her on the night of the assault. (*See* N.T. Trial at 222). The prosecutor asked whether Ms. McWhite indicated that her assailant lived across the street. Appellant's counsel immediately raised a hearsay objection. (*See id.* at 224). In response, the Commonwealth argued that the testimony was "either admissible as a prior inconsistent statement to [Ms. McWhite's] testimony in court or a prior consistent statement to what she told the police at the time they took her report." (*Id.*) The court overruled the objection, and Ms. Barber confirmed that Ms. McWhite told her that the assailant lived across the street.

The prosecutor then asked Ms. Barber whether Ms. McWhite "indicate[d] that she feared what might happen if she testified against the perpetrator." (*Id.* at 225). Again, defense counsel made a hearsay objection that the court overruled. Ms. Barber then responded that Ms. McWhite did fear the consequences of testifying against the perpetrator. Next, the prosecutor asked, "Who did you understand her to be talking about?" (*Id.*) Ms. Barber replied, "Bryan." (*Id.*) The prosecutor followed up by asking whether Ms. McWhite told Ms. Barber "that she was afraid of the defendant." (*Id.*) Ms. Barber responded affirmatively. Defense counsel made a hearsay objection

at that point, which the court also overruled.

Finally, the prosecutor asked Ms. Barber whether Ms. McWhite told her about the photos that Appellant had sent. (***Id.*** at 226). Ms. Barber responded affirmatively, Appellant's counsel raised another hearsay objection, and the court overruled the objection. The prosecutor then asked about what was depicted in the photos. Defense counsel objected to the question on hearsay grounds, but the court overruled the objection. At that point, Ms. Barber stated: "A gun and bulletproof vest." (***Id.*** at 227). The prosecutor questioned Ms. Barber about whether Ms. McWhite believed Appellant was attempting to convey some message by sending the photos. Defense counsel objected on hearsay grounds, but the court overruled the objection. Ms. Barber answered that Ms. McWhite "felt that [Appellant] was trying to intimidate her" by sending the photos. (***Id.*** at 228).

Regarding the prosecutor's question about whether Ms. McWhite had indicated that the assailant lived across the street, the trial court reiterated:

> The claim that McWhite's assailant lived across the street from her contradicted her trial testimony that she was assaulted by "TT," who lived in Baltimore. Therefore, it constitutes a prior inconsistent statement admissible pursuant to Pa.R.E. 613 to impeach McWhite's credibility. Considering McWhite's recantation of her pretrial claims that [Appellant] assaulted her, we believed evidence shedding light on her credibility was highly relevant.

(Trial Court Opinion at 16-17) (record citations and footnote omitted).

Regarding the prosecutor's questions about Ms. McWhite's fear of Appellant, the trial court reasoned:

> Each of the statements elicited from Barber and attributed to McWhite expressed McWhite's "emotional condition" or "mental feeling," fear, **at the time the statement was uttered**. Accordingly, we believe the statements are admissible as substantive evidence.

(**Id.** at 18-19) (emphasis in original) (footnote omitted).

The court provided a similar rationale to explain the admission of Ms. Barber's responses about the photos Appellant sent to Ms. McWhite:

> McWhite felt fear, and she felt that [Appellant] was trying to intimidate her. Those statements of her emotional or sensory condition, those mental feelings, are admissible as statements of her then-existing mental, emotional, or physical condition under Pa.R.E. 803(3). We need not reiterate in detail our finding that such evidence is highly relevant under the circumstances of this case.

(**Id.** at 20).

We agree with these determinations. Again, Ms. McWhite's messages identifying her neighbor as the assailant were inconsistent with her trial testimony identifying "TT" as the assailant. Additionally, Ms. McWhite's messages expressing her fear of Appellant constituted statements about her then-existing emotional condition. **See** Pa.R.E. 803(3). On this record, the court did not abuse its discretion in admitting the hearsay statements. **See Belknap, supra**. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/28/2025